Ann Elizabeth BAROCO, As Administratrix of the Estate of Michael Anthony Baroco, Sr., Deceased, Plaintiff-Appellee,

v.

ARASERV, INC., a Division of ARA Services, Inc., a Delaware Corporation, and ARA Services, Inc., a Delaware Corporation, Defendants-Appellants.

No. 77–2131.

United States Court of Appeals, Fifth Circuit.

July 11, 1980.

Alton R. Brown, Don O. White, Mobile, Ala., for defendants-appellants.

A. Danner Frazer, Jr., Mobile, Ala., A. G. Condon, Jr., Pensacola, Fla., for plaintiff-appellee.

Before COLEMAN, Chief Judge, KRAVITCH and HENDERSON, Circuit Judges.

KRAVITCH, Circuit Judge.

In this wrongful death action the jury returned a verdict for the appellee in the amount of $500,000. Appellants claim errors below including instructions to the jury, denial of a motion for directed verdict and failure to reverse as excessive the jury's award. We find these claims to be without merit; therefore, we affirm.

On April 10, 1973 the appellant Araserv and its subsidiary entered into a contract with the state of Alabama for the operation of a recreation facility at Gulf Shores, Alabama. The contract expressly provided that it was entered into for the benefit of the public. Specifically, the contract required that Araserv operate a pavilion at the Gulf Shores beach area. Pursuant to § 16 of the contract, the appellants were obligated to provide two lifeguards for the pavilion area and to furnish all necessary life-saving equipment. Moreover, the appellants were required to take all proper safeguards for the prevention of injuries or damage to the public. The contract was scheduled to terminate five years from the opening of the Gulf Shores Park in 1974, although the precise date for the opening

was not provided. Only one lifeguard was hired, however, and he was not advised of the availability of any life-saving equipment, nor had such equipment been purchased at the time of the death involved here. The lifeguard reported for work on May 12, 1974.

May 12, 1974 was also the day on which Anthony Baroco, appellee's decedent, took his wife and family to the Gulf Shores Beach. Upon their arrival at the beach, Baroco noticed two teenagers at play in the water. Later, one of the teenagers approached Mr. Baroco and informed him that her playmate was in danger and asked for his assistance. Although the water was choppy and the waves were high, Baroco, after instructing the teenager to summon the lifeguard, went to the young girl's aid. As soon as the lifeguard was informed of the plight of the teenaged swimmer and the rescue attempt of Mr. Baroco, he also attempted a rescue. Although the lifeguard was able to swim the nearly 150 yards to the pair, he was unable to save either: the teenager already appeared dead and Baroco had panicked preventing rescue. Because the rescue attempts failed, Baroco drowned.

Appellee filed a wrongful death action in a two-count complaint charging tortious breach of contract and negligence. At trial, this claim was submitted to the jury, which returned a verdict against the appellants, awarding appellee $500,000.

The appellants urge several grounds for reversal: *inter alia*[1] (1) that a breach of contract claim cannot support a wrongful death action, (2) that the court erred in failing to give certain instructions involving the standard of care owed to appellee's decedent, (3) that the court erred in giving a "sudden emergency" instruction, (4) that as a matter of law appellee's decedent was contributorily negligent, and (5) that the award was excessive.

Appellants first argue that the court erred in submitting the tortious breach of contract claim to the jury. Appellants base their argument on the punitive nature of Alabama's wrongful death statute: damages recoverable are punitive rather than compensatory, and because punitive damages are not recoverable in contract actions in Alabama, then a wrongful death action may not be maintained in a breach of contract claim. As the appellants contend, the Supreme Court of Alabama has specifically held that a contract claim cannot support a wrongful death action. *Clinton Geohagan v. General Motors Corp.*, 291 Ala. 167, 279 So.2d 436 (1973). The appellants are correct as far as the argument goes. The appellants have failed to focus, however, on the *tortious* nature of the instant breach of contract action. Here, the appellee did not claim that the death occurred as a result of a breach of contract, but rather the death resulted from the nonperformance of a duty *established* by the contract. In *Thaggard v. Vafes*, 218 Ala. 609, 119 So. 647 (1929), the Supreme Court of Alabama expressly held that a wrongful death action may be maintained for such tortious breach of contract. In the instant case, as provided in the contract, appellant Araserv owed a duty to patrons of the beach as third party beneficiaries of the contract to provide two lifeguards and life-saving equipment. The appellants failed to observe this duty and testimony established that the failure proximately caused the death of Baroco.[2] Thus, the court was correct in submitting this claim to the jury.

Appellants next contend that the court erred in failing to give proffered instructions on appellants' theory of the case. For the purpose of analysis these instructions

1. We have considered appellants' other grounds of error that insufficient evidence existed to establish that the contract was in effect at the time of the drowning and that opinion testimony had been erroneously included. We hold that these claims are meritless.

2. Mark Bodiford, the lifeguard present on the fateful day, testified that because he was able to reach the appellee's decedent in the water, rescue could have been effected had he had the proper equipment. It was also possible for the jury to infer that had a second lifeguard been hired appellee's decedent need not have risked his life to save the drowning teenager.

will be broken down into two parts: the licensee instruction, and the statutory instructions.

 Relevant to the negligence claim, the court instructed the jury as to the standard of care owed to *invitees*, which charge was submitted by the appellee. In contrast, the appellants offered the following instruction involving the duty owed to a *licensee*:

> The court charges the jury that a licensee is a person who enters or remains on the premises of another by invitation, admission, or acquiesces for the licensee's own benefit, convenience or pleasure. The duty owed to the licensee by the owner or occupant of the premises is not to willfully or wantonly injure him, nor negligently injure him after discovering he is in a position of peril.

The court refused to submit this charge to the jury on the ground that the appellee's decedent was an invitee as a matter of law. There being no authority in Alabama as to the duty owed to a person in the position of appellee's decedent, the court correctly applied the relevant common law as established in other jurisdictions. *See Nordgren v. Strong*, 110 Conn. 593, 149 A.2d 201 (1930).[3] Hence the court's refusal to give the appellants proffered instruction was not error. Moreover, the record does not demonstrate that the appellants objected adequately to preserve the right to appeal as required by Rule 51 of the Federal Rules of Civil Procedure. Although appellants did

timely object to the court's decision, the objection was not made with the specificity necessary to notify the judge of the legal relevance of the theory that the appellants wished to advance before the jury. This rule is not a formality: its purpose is to forestall needless appeals by giving the trial court sufficient legal and factual background to make a reasoned decision as to the relevance of the instruction. The failure of the appellants to explain the relevance of their proffered instructions to the theory of their case deprived the trial court of the opportunity to make a reasoned decision.

The other requested instructions involved Alabama statutory provisions, particularly §§ 281[4] and 283[5] of Title 47, Code of Alabama (recompiled 1958). It is important to note that Title 47 was entitled "An Act to Clarify and Codify the Common Law with Respect to the Duty of Care Owed by Landowners towards Persons Who May Be Upon Their Premises for Hunting, Fishing, Sporting or Recreational Purposes and Not for Purposes Connected with the Landowner's Business." The trial court determined that the code sections relied on by the appellants in formulating the instructions at issue did not apply to the facts of the case as a matter of law.

 There being no cases construing these statutes, we must determine what an Alabama court would do in such a situation.[6] In *Brown v. National Motor Homes*

---

3. In *Nordgren v. Strong*, the appellate court was confronted with a situation nearly identical to the instant case. The trial court, however, had instructed the jury that drowning victims of a public resort were licensees rather than invitees. The court of appeals reversed analogizing the victims to patrons of department stores. *See also Copeland v. Larson*, 46 Wis.2d 337, 174 N.W.2d 745 (1970).

4. Section 281 of Title 47, Code of Alabama (recompiled 1958) provides:
> An owner, lessee or occupant of premises owes no duty of care to keep such premises safe for entry and use by others for . . . water sports . . . or any other recreational purposes, or to give any warning of hazardous conditions, use of structures or activities on such premises to persons enter-

ing for the above-stated purposes, except as provided in § 283 of this title.

5. Section 283 of the same Title provides:
> This chapter does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to hunt, fish, trap, camp, hike or sightsee was granted for commercial enterprise or profit . . . .

6. In an unpublished opinion this court certified the following questions to the Supreme Court of Alabama:
> *QUESTIONS FOR CERTIFICATION TO THE SUPREME COURT OF ALABAMA*
> 1. Under the law of the State of Alabama and the facts of this case, was the status of

*Fleets, Inc.*, 276 Ala. 493, 164 So.2d 489 (1963), the Alabama Supreme Court stated:

Suffice it to say that the Title alone should be considered and a determination made of the object, or objects, it expresses; and the body of the Act, regardless of definition, cannot enlarge the meaning.

276 Ala. at 494, 164 So.2d at 490. Because the act at issue was intended to apply to persons who are *not* connected with the landowner's business and because the appellee's decedent was in the Gulf Shores pavilion area in connection with the business of the appellants as provided by the contract with Alabama, we hold that the trial court was correct in determining that these sections would not be deemed applicable by an Alabama court.

■ Appellants also contend that the court erred in instructing the jury on the "sudden emergency" doctrine.[7] In essence, the sudden emergency doctrine is that one, without fault on his part, suddenly and unexpectedly placed in a perilous situation so as to be compelled to act instantly and without an opportunity for the exercise of deliberate judgment, is not chargeable with negligence if, in attempting to escape from the peril or minimize the threatened injury, he acts as a person of reasonable prudence would or might have acted in a similar situation. *Swindall v. Speigner*, 283 Ala. 84, 87, 214 So.2d 436 (1968). The appellants

argue that this charge was irrelevant because plaintiff's decedent was never placed in the perilous situation; rather, he placed himself in a perilous situation by going to the aid of the drowning teenager. It is not necessary for us to pass on the relevance of this instruction because the appellants failed to object to this instruction and therefore appeal is barred by Rule 51, *supra*.[8]

■ Appellants further contend that the court erred in denying their motion for directed verdict and motion for a judgment notwithstanding the verdict. Specifically, the appellants claim that the appellee's decedent was contributorily negligent as a matter of law. Admittedly, when a person voluntarily places himself in an obvious position of peril, he is guilty of contributory negligence. *Louisville & N.R. Co. v. Holland*, 164 Ala. 73, 81, 51 So. 365 (1909); *Alabama Co. v. Sanders*, 202 Ala. 295, 80 So. 360 (1918). The testimony at trial established that Mr. Baroco considered it dangerous to enter the Gulf under the conditions that prevailed on the day in question. It was also established, however, that Mr. Baroco was an experienced Gulf swimmer. Competent testimony further showed that, given the conditions of the Gulf that day, no one should have been in the water for swimming purposes. Moreover, the water

appellee's decedent as an invitee or licensee a question of fact which should have been determined by the jury?

2. Does Title 47, §§ 281 *et seq.* Code of Alabama (Recompiled 1958), which is currently cited as Code of Alabama 1975, §§ 35–15–1 *et seq.*, which was enacted as Act No. 463 of the Alabama Legislature of 1965, and was entitled "AN ACT, to clarify and codify the common law with respect to the duty of care owed by landowners towards persons who may be upon their premises for hunting, fishing, sporting or recreational purposes and not for purposes connected with the landowners' business," apply to Michael Anthony Baroco, appellee's decedent, under the facts of this case?

3. Was the Alabama Sudden Emergency Doctrine applicable to a person in the position of the appellee's decedent?

By order of the Alabama Supreme Court dated June 4, 1980, the court declined to answer the certified questions.

7. The instruction read as follows:

Now, in determining, however, whether a person is guilty of negligence, the law recognizes what is known as the doctrine of sudden emergency. A person faced with a sudden emergency, that is, a situation not of his own creation, and he acts in response thereto, in so doing he is not held to the same correctness of judgment and action as if he had time and opportunity to fully consider the situation and then act.

In applying this doctrine, you give particular note to the fact that it does not arise if the situation confronting the person in question was caused or contributed to by his own acts.

8. Because there is no Alabama authority to the contrary concerning the application of the sudden emergency doctrine to a rescue attempt, this court is not prepared to hold that the instruction constituted plain error.

was too rough for the rescue squad to even attempt to use a boat. On the other hand, the lifeguard, who also is an experienced Gulf swimmer, eschewed this danger himself to attempt a rescue. Given that Mr. Baroco considered himself an experienced swimmer and that the decision he faced was not only a matter of life and death for the teenager in the Gulf but also one that had to be made without time for reasoned deliberation, we hold that contributory negligence was a valid question for a jury. We are not prepared to hold that a reasonable jury could not have reached the conclusion that it did in this case.

■ Finally, the appellants contend that the verdict was excessive and that therefore the court erred in denying their motion for judgment notwithstanding the verdict and their motion for a new trial. This question must be answered in the context of the statutory language and purpose of Alabama's wrongful death action. The Alabama courts have construed the state's wrongful death act, Ala.Code Ann., Title 7, § 123 to provide that amount of damages rests "largely in the discretion of the jury." *Airheart v. Green,* 267 Ala. 689, 104 So.2d 687, 690 (1973). This discretion is not unbridled, however, but rather a "sound and honest discretion." *Mobile Light & R. Co. v. Nicholas,* 232 Ala. 213, 167 So. 298, 305 (1936). Moreover, because the statute is punitive, in determining the amount of the award "[the jury could give] due regard . . . to the enormity or not of the wrong and to the necessity of preventing similar wrongs." *Id.* Thus, the purpose of the award is not only punitive but also deterrent. Therefore, not only must the degree of appellants' culpability be gauged but also the necessity of preventing similar occurrences in the future.

It is acknowledged that the dangers inherent in a beach operation are great and that the standards for comporting with this risk are commensurably great. The appellants, in inducing the State of Alabama to grant the concession contract, represented that they gave their employees extensive training and relied upon the most modern equipment in the industry. Moreover, testimony established that to properly safeguard a Gulf beach the size of the one at issue a minimum of two lifeguards with rescue equipment is required. Here, the evidence is undisputed that the defendants had but one lifeguard and no equipment. Although as evidence of their responsibility the appellants had represented to Alabama that a Red Cross life-saving certificate would be a prerequisite for their lifeguards, the one lifeguard hired did not possess such a certificate. Therefore, not only did appellants violate their own standards but they violated all reasonable standards of care as established by the contract and common law. Moreover, the jury could have been motivated by a desire to prevent future deaths caused by commercial concerns which fail to recognize and uphold the duties and responsibilities provided for by contract with the state in similar circumstances. Furthermore, the court thoroughly and properly instructed the jury as to the applicable standards and cautioned it against bias.

■ The trial court did not disturb the jury's award. Alabama authority accords great weight to a verdict acquiesced in by the judge, who was present throughout the trial and was therefore able to determine the excessiveness of the award, *General Telephone Company of Alabama v. Cornish,* 291 Ala. 293, 280 So.2d 541, 545 (1973); in such circumstance the award will be disturbed only if it is plainly and clearly indicated that the verdict was the product of prejudice, passion, partiality, bias or mistake. *See Liberty National Life Insurance Co. v. Weldon,* 267 Ala. 171, 100 So.2d 696 (1958). We are unable to hold that verdict was clearly excessive when judged by this standard.

AFFIRMED.

COLEMAN, Chief Judge, dissenting.

Since this is a diversity case and, in the ultimate, does nothing more than decide the victor in a damage suit, a dissent, under *Erie,* is of no jurisprudential importance. Probably the better course to pursue would

be not to file one. Nevertheless, I am compelled to say that if the matter were left to me alone I would reverse this judgment. As the majority opinion states, "The water was too rough for the rescue squad to even attempt to use a boat". It is my considered judgment that no reasonably minded jury could possibly find that the deceased was not guilty of contributory negligence when he entered the angry waters under the circumstances then prevailing.