SAGEBRUSH LIMITED, a Nevada Limited Partnership; SAGEBRUSH PROPERTIES, INC., General Partner, Appellants, v. CARSON CITY, CARSON CITY BOARD OF SUPERVISORS, CARSON CITY PLANNING DEPARTMENT, and CARSON CITY PLANNING DIRECTOR, Respondents.

No. 14143

March 31, 1983            660 P.2d 1013

*Smith & Gamble, Ltd.,* Carson City, for Appellants.

*William A. Maddox,* District Attorney, and *David I. Nielsen,* Deputy District Attorney, Carson City, for Respondents.

---

[2]Chief Justice Manoukian voluntarily disqualified himself from the consideration of this case.

## OPINION

By the Court, MOWBRAY, J.:

Appellants contend that NRS 278.335(1), which requires local governments to forward copies of tentative subdivision maps to various state agencies for review, creates a duty on the part of respondents toward appellants, the violation of which is negligence *per se*. We disagree, and therefore affirm the judgment of the district court.

### THE FACTS

Carson Tahoe Ventures, appellants' predecessor in interest, submitted a tentative map for the so-called Lahontan Subdivision to the Carson City Planning Commission on February 1, 1978. Appellants subsequently acquired the property proposed to be subdivided. The City failed to submit a copy of the tentative map to the Division of Water Resources of the State Department of Conservation and Natural Resources. The City had been on notice since July 1977 that it was to forward all tentative subdivision maps to the Division of Water Resources for comment in conformance with NRS 278.330(3) and NRS 278.335(1).

The Carson City Board of Supervisors approved appellants' tentative map on March 15, 1978. Appellants, who had divided development of the subdivision into three phases because of the City's growth management ordinance, began to prepare final maps for all three phases. The maps for the second and third phases (Units Two and Three) were prepared some thirty to sixty days later than the map for the first phase (Unit One).

The Division of Water Resources gave its approval of the final map of Unit One on June 8, 1978, apparently without having seen a tentative map. In the fall of 1978, however, the

State Engineer placed a moratorium on the approval of subdivisions in the Eagle Valley area, because a newly-released U.S. Geological Survey study showed a significant decrease in water availability in that area. Because the Division had not received the tentative map for the Lahontan Subdivision, it treated the final maps for Units Two and Three as tentative maps. Because the Division had not received the maps prior to the release of the USGS report, it refused to approve them.

After receiving notice in November 1978 that Units Two and Three were going to be treated as new subdivisions and that approval of new subdivisions in Carson City was unlikely in the near future, appellants sold the Lahontan Subdivision to the Medical Clinic of Sacramento for $1,900,000. Appellants agreed to waive the interest on the Clinic's $1,400,000 promissory note for whatever period following April 15, 1979 that approval by the State Engineer was not forthcoming.

The Division disapproved Units Two and Three in a May 24, 1979 letter to appellants. Eventually appellants and the Medical Clinic sought Carson City approval of a Planned Unit Development at the Lahontan site; unlike a subdivision, a PUD did not at that time require Division of Water Resources approval. The Carson City Board of Supervisors approved the proposed PUD on November 15, 1979; interest on the Medical Center note was reinstated as of that date.

Appellants subsequently filed their complaint in the instant action, alleging that the City's failure to submit their tentative map to the Division was negligent and a proximate cause of their loss of $81,698 in interest on the Medical Center note. They also sought to recover the cost of preparing the final maps for the abandoned subdivision and the additional cost of preparing a Planned Unit Development proposal. After a bench trial, the district court concluded that NRS 278.335 does not of itself establish a duty of care running from respondents to appellants, that the City's violation of the statute was therefore not negligence *per se,* and that the City did not otherwise violate a duty of reasonable care owed to appellants. This appeal followed entry of judgment for respondents.

## NO STATUTORY DUTY OF CARE

At the time the events in the instant action took place, NRS 278.335 provided in relevant part as follows:

1. A copy of the tentative map shall be forwarded by the local government to the division of water resources of the state department of conservation and natural resources and the health division of the department of human

resources, or the local representative acting for the health division for review.

. . . .

5. Each reviewing agency shall within 15 days from the receipt of the tentative map file its written comments with the planning commission or the governing body recommending approval, conditional approval or disapproval and stating the reason therefor.[1]

Appellants contend that by failing to forward the tentative map of the Lahontan Subdivision to the Division of Water Resources in violation of NRS 278.335(1), respondents were negligent as a matter of law.

Section 286 of the Restatement (Second) of Torts provides several criteria for judicial adoption of the requirements of a legislative enactment as the standard of conduct of a reasonable person. Section 286 reads as follows:

The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

(a) to protect a class of persons which includes the one whose interest is invaded, and

(b) to protect the particular interest which is invaded, and

(c) to protect that interest against the kind of harm which has resulted, and

(d) to protect that interest against the particular hazard from which the harm results.

*See* Bill Stremmel Motors v. First Nat'l Bank, 94 Nev. 131, 134, 575 P.2d 938, 940 (1978) (damaged commercial lender is member of class of persons for whose benefit Legislature created statutory duty of car dealers to forward reports to the Dept. of Motor Vehicles listing security interests in cars sold); Scott v. Smith, 73 Nev. 158, 160-61, 311 P.2d 731, 732 (1957) (overruled on other grounds, 79 Nev. 328, 383 P.2d 368) (plaintiff must show that purpose of ordinance was to protect against the harm that occurred; in this respect, the court is concerned with the persons, interests, and hazards that the ordinance was designed to reach). *See also* Sobrio v. Cafferata, 72 Nev. 145, 149-150, 297 P.2d 828, 830 (1956).

[1]In 1979 the Legislature amended subsection (1), changing the word "shall" to "must" and adding the division of environmental protection to the list of state agencies which are to receive copies of each tentative map. 1979 Nev. Stat. at 704. "Shall" and "must" are both imperative terms. *See* Thomas v. State, 88 Nev. 382, 498 P.2d 1314 (1972).

Therefore, violation of a statute may constitute negligence *per se* only if the injured party belongs to the class of persons that the statute was intended to protect, and the injury is of the type that the statute was intended to prevent. Iverson v. Solsberry, 641 P.2d 314, 316 (Colo.App. 1982); Namauu v. City and County of Honolulu, 614 P.2d 943, 946 (Hawaii 1980); Boyles v. Oklahoma Natural Gas Co., 619 P.2d 613, 618 (Okla. 1980); Bob Godfrey Pontiac, Inc. v. Roloff, 630 P.2d 840, 844-45 (Or. 1981). *See generally* Prosser, *Handbook of the Law of Torts* § 36 at 190-202 (4th ed. 1971). Whether a legislative enactment provides a standard of conduct in the particular situation presented by the plaintiff is a question of statutory interpretation and construction for the court. Sobrio v. Cafferata, 72 Nev. at 150, 297 P.2d at 830.

Appellants contend that one of the purposes of NRS 278.335 is to protect subdividers against the risk of bureaucratic problems that arise or conditions on final approval that are established after the local governing body has approved the tentative map. In essence, they argue that the Legislature intended local government approval of the tentative map to indicate prior approval by all relevant governmental agencies, so that subdividers could rely on such approval in seeking buyers and spending money on final map preparation.

Appellants attempt to support their argument in two ways. First, they point to the amendment of the word "shall" to "must" in 1979 as evidence of the priority that the Legislature placed on the transmission of tentative maps to the reviewing agencies. As discussed in footnote 1, *supra,* this change had no substantive effect.

Second, appellants note that NRS 278.335(5) sets a 15-day time limit for each agency to file its written comments with the local planning commission or governing body. Appellants apparently believe that NRS 278.350[2] would operate to grant automatic approval of a tentative map if any one reviewing agency failed to return its comments to the planning commission or governing body within 15 days. They reason that

[2]NRS 278.350 provides as follows:

    1. The time limit for acting and reporting on a tentative or final map may be extended by mutual consent of the subdivider and the governing body or planning commission, as the case may be.

    2. If no action is taken within the time limits set forth in NRS 278.010 to 278.630, inclusive, a tentative map as filed shall be deemed to be approved, and the clerk of the governing body shall certify such approval.

because NRS 278.350 was designed to protect subdividers, the requirement that the local government must forward the tentative map to the reviewing agencies is also intended to protect subdividers, since receipt of the map by an agency is needed to trigger the 15-day time limit. However, there is no set time period within which the local government must forward the tentative map to the reviewing agencies.

Appellants provide no indication that NRS 278.335(1) is anything other than a law enacted solely to promote the public interest in careful land use planning and to ensure that all environmental, health, safety, and conservation requirements are met before a subdivision is approved.[3] They have not shown that the statute was intended to protect subdividers as a class, or to protect against the sorts of harms that occurred in this case. Therefore, the district court was correct in holding that NRS 278.335(1) does not establish a standard of conduct applicable to appellants' negligence action, and that respondents' violation of the statute was not negligence *per se.* We affirm the judgment of the district court.[4]

Manoukian, C. J., and Springer, Steffen, and Gunderson, JJ., concur.

---

[3]Appellants cite Pennyton Homes, Inc. v. Planning Bd. of Stanhope, 189 A.2d 838 (N.J.Super. 1963), *aff'd,* 197 A.2d 870 (1964), in support of their contention that NRS 278.335 and tentative map approval are intended to protect subdividers as a class against changes occurring subsequent to the tentative map approval. However, *Pennyton Homes* was not a negligence case; rather, it involved interpretation of New Jersey's Municipal Planning Act, which expressly provided that tentative approval of a subdivision plat would confer on the applicant the right for a three-year period to rely on the general terms and conditions on which the tentative approval had been granted. *See* 197 A.2d at 871.

[4]As appellants did not appeal the finding of the district court regarding the absence of ordinary negligence, we shall not discuss the issue.