[No. 30951-0-I.   Division One.   August 23, 1993.]

*In the Matter of the Estate of*
ARTHUR KECK.

JANICE CABE, *as Personal Representative, Appellant,* v.
JOHN BLAIR, ET AL, *Respondents.*

*David R. Hallowell* and *David R. Hallowell & Associates;*
*David T. Mulholland* and *Freise & Welchman,* for appellant.

*Barbara J. Boyd* and *Hackett, Beecher & Hart,* for respondents.

AGID, J. — In this wrongful death action, Janice Cabe, the representative of the estate of Arthur Keck, appeals the trial court's order granting summary judgment to John Blair. The trial court ruled that, as a matter of law, Cabe could not establish the elements of the rescue doctrine and that the doctrine did not apply to the facts of this case. Cabe argues that the elements of the rescue doctrine are present and that genuine issues of material fact exist as to whether Keck was rescuing Blair from "imminent peril" when Keck was killed and, if so, whether Blair's negligence was the proximate cause of that peril.[1] We conclude that a jury could properly apply the doctrine to the facts of this case and accordingly reverse and remand for trial.

## I
### FACTS

On April 1, 1987, John Blair had three or four beers over a period of several hours in a tavern in Monroe, Washington. He later drove to a friend's home, visited for about an hour, and left at 7:30 p.m. to go home. While he was driving east on State Route 2, a 4-lane highway with only a few scattered street lights, Blair accidentally dropped a cassette tape on the floor of the passenger side of his truck and leaned down to retrieve it. As he did so, he glanced away from the road and ran into the back of a truck that was attempting to turn left off the highway. The other driver was not injured, but the impact of the collision forced Blair's truck across the eastbound lanes and pinned his passenger door against the guardrail. The door on the driver's side of Blair's truck was smashed and buckled so that Blair could not open it.

John Cormican drove by and, recognizing Blair's truck, stopped to offer assistance. Although it was dark, he could

---

[1] The facts are derived from the affidavits, declarations, and deposition excerpts that the trial court considered.

see that Blair was bleeding "pretty good" from facial cuts from the broken windshield. Arthur Keck lived across the highway and joined Cormican at Blair's truck, apparently after hearing the accident. Blair asked both men to help him get out of the truck. They pulled on the door while Blair kicked it from the inside, and it eventually opened. According to Cormican, he could smell alcohol on Blair and Blair was acting "goofy". Although Blair did not believe he was impaired by alcohol at the time, he remembered receiving a "pretty good crack on the head" from the accident. Because Blair appeared intoxicated and was bleeding, Cormican felt it would be too dangerous to leave him alone with his truck, which extended about 1 foot into the easternmost lane of traffic. The men decided to, walk across the highway to Keck's house to clean Blair's injuries and wait for the police. According to Cormican's later declaration, neither he nor Keck could determine for certain how badly Blair had been injured, but Cormican stated that they could both see that Blair was

> bleeding pretty good from the face and head, he had a possible broken leg or foot, [he] could not get out of his car or the highway without help, and [he] was very drunk. Given Blair's condition, leaving him there on the highway would have exposed him to the threat of additional injury. Blair needed our immediate help, asked for our help, and got our help.
>
> As I indicated in my deposition, Blair could not carry his own weight and could not walk to a place of safety without [Keck's] assistance.

In an affidavit, Cormican also stated that Blair wanted to clean the blood from his face and "straighten up" before the police arrived.

Consequently, Keck put his arm around Blair's shoulders and began slowly walking with him across the highway. According to Blair's declaration, he was shaken from the accident, but he did not think he needed help to cross the highway and Keck was only giving him support. As they crossed the highway, Cormican was ahead of Blair and Keck. He was the first to see the headlights of a westbound car which he believed was traveling at least at the 55 m.p.h.

speed limit or above. He signaled the driver, who was later identified as Eric Wood, to slow down and screamed to warn Blair and Keck that the car was approaching. The driver did not slow down and, when Keck saw the car, he pushed Blair off the highway to safety. The car only hit Blair's foot, but it struck Keck and instantly killed him.

Janice Cabe, the personal representative of Keck's estate, sued Blair for wrongful death and sought recovery of damages under the rescue doctrine. Blair moved for summary judgment on the ground that Cabe had not established the necessary elements of that doctrine.

In addition to supporting memoranda, declarations, and deposition transcripts, the trial court considered Cormican's May 10, 1992, affidavit which included the following statements:

> There was no indication that Mr. Blair was in any "imminent danger or imminent peril" at the time that we helped him get out of his vehicle. The only injuries to Mr. Blair which I saw were some facial cuts and a possible leg injury.
>
> . . . .
>
> . . . Again, neither I nor Mr. Keck, as far as anything said or done at the scene, ever considered Mr. Blair to be in any imminent danger or imminent peril when we were assisting him at the accident scene.

The court also considered Cormican's May 15, 1992, certified statement in which he clarified his May 10 affidavit. In the later document, Cormican stated that the attorney who had requested the affidavit told him that "imminent peril" meant "about to die". After hearing oral argument and allowing supplemental briefing, the trial court granted Blair's motion for summary judgment and dismissed the case with prejudice. Cabe now appeals.

## II
### The Rescue Doctrine

We first must determine whether, as a matter of law, the rescue doctrine can be applied to these facts; *i.e.*, whether Cabe can establish the elements of the doctrine. The rescue doctrine "is intended to provide a source of recovery to one who is injured while reasonably undertaking the rescue of a

person who has negligently placed himself in a position of imminent peril." *Maltman v. Sauer*, 84 Wn.2d 975, 976-77, 530 P.2d 254 (1975); *Highland v. Wilsonian Inv. Co.*, 171 Wash. 34, 39, 17 P.2d 631 (1932). The doctrine

> allows the rescuer to negate the presumption that his intentional act of rescue is the superseding cause of his injuries, thus allowing him to prove it was the defendant's negligence that proximately caused his injuries. . . . The rescue doctrine encourages efforts to save imperiled persons despite a rescuer's voluntary (though not reckless) exposure to danger.

(Citation omitted.) *Ballou v. Nelson*, 67 Wn. App. 67, 70, 834 P.2d 97 (1992).

■ In Washington, the rescue doctrine has the following elements:

> (1) There must be negligence on the part of the defendant which is the proximate cause of peril, or what would appear to a reasonable person under the circumstances to be peril, to the life or limb of another.
> (2) The peril, or reasonable appearance of peril, to the life or limb of another must be imminent.
> (3) In determining whether the peril, or appearance of peril, is imminent, in the sense that an emergency exists requiring immediate action, the circumstances presented to the rescuer must be such that a reasonably prudent [person], under the same or similar circumstances, would determine that such peril existed. (The issue of whether the rescuer's determination conformed with the reasonably prudent [person] standard is a question for the jury, under proper instructions.)
> (4) After determining that imminent peril to the life or limb of a person exists, the rescuer, *in effecting the rescue*, must be guided by the standard of reasonable care under the circumstances. (Whether there has been conformance with this standard also is a question for the jury, under proper instructions.)

*French v. Chase*, 48 Wn.2d 825, 830, 297 P.2d 235 (1956).

(a) <u>Proximate Cause</u>. As the initial step of our analysis, we must consider whether a jury could conclude that Blair's conceded negligence was a proximate cause of the peril that resulted in Keck's death. *French*, 48 Wn.2d at 830. In general,

> [t]he doctrine of proximate cause in Washington entails the two elements of cause in fact and legal causation. Cause in fact refers to the "but for" consequences of an act; it is the physical connection between an act and an injury. Cause in fact is gen-

erally a question for the jury, but it may become a question of law for the court when the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion.

The legal causation prong of proximate cause involves policy considerations of how far the consequences of a defendant's acts should extend. It concerns whether liability *should* attach as a matter of law given the existence of cause in fact.

(Footnotes omitted.) *Christen v. Lee*, 113 Wn.2d 479, 507-08, 780 P.2d 1307 (1989).

In the narrower context of the rescue doctrine, "[t]he proximate cause of injury to the rescuer . . . is the negligence of the person who created the dangerous situation." *Highland*, 171 Wash. at 39. It is the "cause without which the accident could not have happened." *Highland*, 171 Wash. at 39. As the Michigan court explained in *Sweetman v. State Hwy. Dep't*, 137 Mich. App. 14, 26, 357 N.W.2d 783, 789 (1984),

[t]he [rescue] doctrine helps to establish proximate cause by providing that where a defendant has created a situation of peril for another the defendant is held to have caused the peril not only to the victim but also to his rescuer.

Depending upon the circumstances in a particular case, there may be more than one proximate cause of an injury because the acts of different people combine to cause the injury. *Brashear v. Puget Sound Power & Light Co.*, 100 Wn.2d 204, 207, 667 P.2d 78 (1983); *see also* WPI 12.04.[2] Washington has consistently held that

where the concurrent or successive negligence of two or more persons combined together results in an injury or loss to a third person, and the negligence of the one without the concurring negligence of the other would not have caused the injury or loss, the third person may recover from either or both for the damages suffered.

---

[2]WPI 12.04 states in part:

"There may be more than one proximate cause of the same . . . [occurrence]. If you find that the defendant was negligent and that such negligence was a proximate cause of injury or damage to the plaintiff, it is not a defense that . . . [some other cause] [or] [the act of some other person who is not a party to this lawsuit] may also have been a proximate cause."

*Ringaard v. Allen Lubricating Co.*, 147 Wash. 653, 655-56, 267 P. 43 (1928);[3] *see also Impero v. Whatcom Cy.*, 71 Wn.2d 438, 447, 430 P.2d 173 (1967).

Further, as *Maltman* discussed,

> [t]he original negligence of the defendant, which placed [the plaintiff] in his present imperiled predicament, must be an active factor in the course of events which ultimately culminates in injury to the plaintiff. In other words, the plaintiff's injury must not be the result of an intervening cause which came into active operation after the negligence of the defendant has ceased.[4] . . . The trier of fact must determine if an intervening act has broken the causal chain between the conduct of the defendant and the injury of the plaintiff.
>
> If the act itself is not foreseeable — in other words, if the act is an intervening, efficient cause — it will break the causal connection between the defendant's negligence and the plaintiff's injury.

*Qualls v. Golden Arrow Farms, Inc.*, 47 Wn.2d 599, 602, 288 P.2d 1090 (1955). "Where such intervening act or force is not reasonably foreseeable, it must be regarded as a superseding cause negating the claim of proximate or legal cause." *Cook v. Seidenverg*, 36 Wn.2d 256, 264, 217 P.2d 799 (1950); and *Mehrer v. Easterling,* 71 Wn.2d 104, 109, 426 P.2d 843 (1967).

*Maltman*, 84 Wn.2d at 982.

Here, Blair concedes he was negligent when he looked away from the road to retrieve a cassette tape and, as a result, ran into the car ahead of him. A jury could determine that it was that negligence which caused peril not only to Blair but also to Keck because without it, the danger to Keck would not have existed. *Highland*, 171 Wash. at 39. Thus, the question for the jury at trial will be whether Wood, the driver of the car that hit Keck, was also negligent and, if so, whether that negligence was the sole proximate

---

[3]We note that *Ringaard* was decided long before the 1986 tort reform act under which damages are apportioned among all parties if the jury finds the plaintiff was also negligent. RCW 4.22.070. This does not, however, alter the principle announced in *Ringaard* as it applies to our analysis here of the proximate cause element of the rescue doctrine.

[4]Here, the *Maltman* court voiced the usual dismay of the bench and bar over the "confusing anomaly" created by use of foreseeability in the context of both the duty and intervening superseding cause components of tort analysis. 84 Wn.2d at 982. We agree that this dual usage is confusing and therefore hasten to point out that we are considering foreseeability only in the latter context.

cause of Keck's death. This is because "the act of another person, though *a* proximate cause of the accident, does not excuse the defendant's negligence unless the other party's negligence was the *sole* proximate cause of the plaintiff's injuries." *Brashear*, 100 Wn.2d at 208. The jury will also have to determine whether the injury to Keck, being hit by a car, was the sort of harm that was foreseeable as a result of Blair's negligent driving. *See Maltman*, 84 Wn.2d at 982-83; *Qualls v. Golden Arrow Farms, Inc.*, 47 Wn.2d 599, 602, 288 P.2d 1090 (1955).[5]

Neither the trial court nor this court can determine on the record presented for summary judgment that Blair's admitted negligence was not a proximate cause in fact of Keck's death or that Keck's being hit by a car was not a foreseeable consequence of that negligence.[6] These questions must be determined by the trier of fact under instructions on the legal principles which govern this element of the rescue doctrine.

---

[5]Blair has submitted *Maltman*, 84 Wn.2d at 975 and *Hawkins v. Palmer*, 29 Wn.2d 570, 188 P.2d 121 (1947), as supplemental authority for his position that his negligence was not the proximate cause of Keck's death. Both of those opinions are distinguishable. In *Maltman*, a professional helicopter rescuer was killed when the helicopter crashed en route to a car-accident victim's aid. The court held in part that the plaintiff failed to show that the accident victim's negligence was the proximate cause of the deceased's death. The helicopter crash was not a reasonably foreseeable consequence of the automobile driver's negligence because the reason for the crash was entirely independent from the auto accident. Thus, it was an "intervening cause only tenuously related and totally unforeseeable, in a causal sense, to the original condition attributable to the defendant's conduct." *Maltman*, 84 Wn.2d at 982-83. As discussed above, Blair's negligence clearly was part of the causal chain that led to Keck's death.

In *Hawkins*, the court held that, in order for the rescuer to invoke the rescue doctrine when a defendant is *not* responsible for causing the dangerous situation from which someone had to be rescued, "the defendant must be guilty of some negligence toward the rescuer after he, the rescuer, has begun to attempt the rescue." 29 Wn.2d at 575. Here it was clearly Blair, not some third party, who created the peril he found himself in following the accident. Thus, *Hawkins* is inapposite.

[6]Neither party has argued to this court or the trial court that the legal causation component of proximate cause is absent in this case. Legal causation focuses on questions of the defendant's duty to the plaintiff, *Hartley v. State*, 103 Wn.2d 768, 779-81, 698 P.2d 77 (1985), and is not at issue here.

(b) <u>Imminent Peril</u>. Relying on *French*, 48 Wn.2d at 830, Cabe argues that there is a jury issue on whether Blair was, or reasonably appeared to be, in imminent peril and whether Keck's perception of that peril was reasonable. We agree with Cabe that there is a genuine issue of material fact as to whether Keck and Cormican reasonably believed that Blair was in and continued to be in imminent peril as Keck assisted him across the highway.

In order to grant summary judgment, the pleadings, affidavits, depositions, and admissions on file must demonstrate that there is no genuine issue of material fact and the party seeking summary judgment is entitled to judgment as a matter of law. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). The court must consider all of the facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party, and summary judgment should be granted only if reasonable persons would draw a single conclusion from all of the evidence. *Chelan Cy. Deputy Sheriffs' Ass'n v. Chelan Cy.*, 109 Wn.2d 282, 294-95, 745 P.2d 1 (1987). That test is not met here.

The evidence submitted to the trial court establishes that the two accidents occurred at night on a poorly lit, winding 4-lane highway with a 55 m.p.h. speed limit, that Blair's truck protruded into a lane of traffic on the highway, and that he could only exit the truck by standing in that lane. Keck and Cormican had no way of determining the extent of Blair's injuries from the accident, either before or after they extricated him from his truck. Neither had any medical expertise and, in the darkness, they could only see that Blair was bleeding "pretty good" from facial lacerations. He was acting "goofy", smelled of alcohol, and appeared to have an injured or broken leg. It is reasonable to infer from those facts that, if Keck and Cormican had left Blair at the scene, he could easily have been hit by a car, especially given his apparent condition of being drunk and/or impaired by a head injury and shock from the accident.[7] Blair had asked

---

[7] Blair's counsel on appeal conceded that Keck and Cormican did not act negligently by attempting to take Blair across the highway to Keck's home, rather than leaving him to wait for an ambulance in the truck or by the side of the road.

Keck and Cormican to help him get out of the truck, imply-
ing that it was unlikely Blair would have simply waited in
the truck until an ambulance or the police arrived. Even if
he had stayed in the truck, it provided no assurance of
safety because it extended into the lane of traffic and could
also have been hit. We agree with the Michigan court's view
of such a situation:

> a plaintiff remains in the course of a rescue attempt where he
> or she acts under a reasonable belief that the endangered par-
> ty's peril continues. [*Sweetman*, 357 N.W.2d 783]. Therefore, a
> plaintiff may receive the benefit of the rescue doctrine even
> after the victim is no longer in danger, if the plaintiff reason-
> ably believed that the endangered party was still in peril.

*Solomon v. Shuell*, 166 Mich. App. 19, 25, 420 N.W.2d 160,
164 (1988), *rev'd on other grounds*, 435 Mich. 104, 139, 457
N.W.2d 669, 684 (1990).

Under all of these circumstances, a reasonably prudent
person could have concluded that Blair was in imminent peril
and continued to be in such peril as Keck assisted him across
the highway to a safer location. *See Highland*, 171 Wash. at
42 (under circumstances where a restaurant employee with
heart trouble reentered the kitchen to turn off the oven after
everyone had left because of ammonia fumes leaking from an
ice machine, the court could not say, as a matter of law,
whether real peril existed or not). Consequently, the case
must be remanded for a jury to determine whether Keck
acted reasonably in concluding that Blair was in imminent
peril and whether the peril required the immediate action he
took. *French*, 48 Wn.2d at 830.

■ ■ Finally, Cabe argues that the trial court erred by
considering the challenged portions of Cormican's affidavit
because his statements about whether Blair was in imminent
peril were conclusions of ultimate facts. We agree. Whether
peril was imminent for purposes of the rescue doctrine is a
factual determination for the trier of fact to make. *French*, 48
Wn.2d at 830. Thus, Cormican's statements that Blair was
not in imminent peril when Keck was killed amounted to an
opinion on an ultimate issue of fact for the jury. In the context
of a summary judgment motion, the trial court should not

have considered them. *See Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 359-60, 753 P.2d 517 (1988) ("The 'facts' required by CR 56(e) to defeat a summary judgment motion are evidentiary in nature. Ultimate facts or conclusions of fact are insufficient.").

The trial court's order granting Blair's motion for summary judgment is reversed, and the case is remanded for further proceedings.

BAKER and KENNEDY, JJ., concur.