MICHAELA HARRY, as Guardian ad litem of NICHOLAS J. HARRY, a Minor, and NICHOLAS J. HARRY, Appellants, v. OTELIA R. SMITH and OTELIA A. POLLARD, Respondents.

No. 24010

April 27, 1995

893 P.2d 372

*Smith & Williams,* Las Vegas, for Appellants.

*Edwards, Hunt, Hale & Hansen* and *Trevor L. Atkin,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

### FACTS

Appellant Michaela Harry brought this action on behalf of her son Nicholas who was bitten by a dog. The dog was owned by a couple who were staying at a home owned by respondent Otelia Smith and her daughter respondent Otelia Pollard. The district court granted Smith and Pollard's motion for summary judgment and concluded that they owed no duty to protect Nicholas. This appeal followed.

Smith and Pollard own the house in joint tenancy. Smith resided in the house until 1989. At that time, Smith moved in with her son James because she had suffered several small strokes and had contracted Alzheimer's disease. The record on appeal indicates that Pollard's only involvement in this case is that she jointly owns the house.

Smith's sons, James and Richard, had maintained the house for Smith since the 1970s. James was also in charge of retrieving Smith's mail and paying the regular bills on the house. James and Richard continued to maintain the premises and pay the bills following Smith's departure.

After the house sat vacant for several months, Richard suggested that his son Geoffrey move into the home. Geoffrey was unemployed and he needed an inexpensive place in which to live. Geoffrey eventually moved into the house around the beginning of 1990.

Geoffrey claimed in deposition testimony that he paid rent on a monthly basis to his grandmother Smith. He stated that he usually paid by check. No documentary evidence was presented below to support Geoffrey's claim that he paid rent.

Richard stated in a deposition that when Geoffrey occupied the house no specific agreement was made concerning rent. According to Richard, Geoffrey paid between two and three hundred dollars a month to cover the expenses on the home such as utilities, insurance and taxes. The mortgage on the house had been paid.

Richard asserted that Geoffrey did not execute a written lease agreement because "[i]t didn't seem very nice for a grandson" to do so. Richard testified concerning Geoffrey's status:

> I spoke to my mother about it. I said, "Look, [Geoffrey's] paying rent at the apartment [Geoffrey's prior residence].

You are paying taxes and insurance and all this stuff on the house. It would make alot more sense for him to move into the house so he can pay you at least something that will handle these taxes and other expenses you have got and at the same time take care of the house," since a vacant house tends to be regarded as abandoned and subject to damage.

Richard stated further that he, James and Geoffrey shared the responsibility for maintaining the premises after Geoffrey occupied the house. The premises were surrounded by a poorly maintained three-foot high chain link fence. In one place, the fence bowed because the family frequently moved the fence to store used cars in the backyard.

A few months after Geoffrey occupied the house, he invited Robin Hemple and her boyfriend Robert Osborn to live in the house with him. Richard stated that he gave Robin and Robert permission to live in the house "on a temporary basis as houseguests." According to Richard, Robin and Robert sporadically paid part of the utilities but they did not formally agree to pay rent. Richard claimed in his deposition that he eventually "threw them out" because he believed that they were taking unfair advantage of Geoffrey's hospitality.

Geoffrey asserted in deposition testimony that he and Robin signed a written lease agreement before Robin and Robert moved into the house. Robin apparently signed on Robert's behalf. Robin and Geoffrey agreed to pay $225 each in rent. According to Geoffrey, Smith authorized Richard to sign the lease on her behalf. Geoffrey stated: "I think my father [Richard] signed it on [Smith's] behalf. She knew about it, though, the lease." No copy of the lease agreement was ever produced.

Robin and Robert brought a couple of dogs to live with them at the house. One of the dogs was a pit bull. Richard knew of the dogs and gave Robin and Robert permission to keep them at the house. Geoffrey stated that he knew that the pit bull was potentially dangerous because it had bitten a houseguest on the stomach without provocation.

On June 16, 1990, the dog escaped through the poorly maintained fence and bit Nicholas Harry. Nicholas' mother filed suit on behalf of Nicholas against Robin and Robert as owners of the dog and against Smith and Pollard as owners of the house. Smith and Pollard filed an answer and asserted a cross-claim against Robin and Robert for indemnification. On November 9, 1990, the district court entered a default judgment against Robin and Robert in favor of appellant.[1]

---

[1]Robin and Robert are not parties to this appeal. The clerk of this court shall modify the caption on the docket sheet to correspond to the caption on this opinion.

Smith and Pollard moved the district court for summary judgment. They argued that they were not liable as landlords for the negligence of their tenants under this court's opinion in Wright v. Schum, 105 Nev. 611, 781 P.2d 1142 (1989). The district court agreed and granted the motion.

## DISCUSSION

### The Standard of Review

The district court may only enter summary judgment when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. NRCP 56; Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 663 (1985). In reviewing orders granting summary judgment, this court construes the record on appeal in a light most favorable to the non-moving party. *Butler,* 101 Nev. at 451, 705 P.2d at 663. The moving party has the burden of proving that no triable issues remain. *Id.*

### Landlord/Tenant Relationship

The district court ruled that Smith and Pollard were not liable for the dog bite because they were not responsible as landlords for the negligent conduct of their tenants under Wright v. Schum, 105 Nev. 611, 781 P.2d 1142 (1989). This court ruled in *Wright,* based on general tort principles, that a landlord does not have a duty to protect third parties from injuries occurring off the premises if the landlord simply has knowledge of a dangerous condition or passively permits the condition to persist. *Id.* at 615-16 & n.2, 781 P.2d at 1145. Appellant contends that genuine issues remain concerning whether a landlord-tenant relationship exists in this case.

The record on appeal contains conflicting evidence concerning this issue. The informal arrangement allowing Geoffrey to live at the house does not appear to be a landlord-tenant relationship. The modest amount Geoffrey paid to live in the house was well below market value. His presence at the house appears to be as much a cooperative effort to maintain a family possession and to provide Geoffrey an inexpensive place to live as it was a tenant arrangement. Genuine issues thus remain concerning Geoffrey's status.

Likewise, the record contains conflicting evidence concerning the status of Robin and Robert. Although Geoffrey claims Robin signed a lease agreement, the family did not require the couple to pay rent. In fact, Richard described Robin and Robert as "tempo-

rary . . . houseguests.'' Respondents produced no lease agreement or any other evidence that Robin, Robert or even Geoffrey ever paid rent to Smith. Because the record contains conflicting evidence concerning the relationship between the parties, the district court erroneously granted summary judgment on the issue of a landlord-tenant relationship.

### Duty of Care

Regardless of whether a landlord-tenant relationship exists in this matter, appellant has the burden of showing that Smith and Pollard had a duty to protect third parties from dog attacks. Appellant sued Smith and Pollard as owners of the house. Smith and Pollard, however, took no active part in the events leading to the dog bite. Their involvement in this matter is limited to their status as owners of the house.

Landowners' liability for injuries occurring off the premises does not turn on their status as landowners. Wright v. Schum, 105 Nev. 611, 613-14, 781 P.2d 1142, 1143 (1989). They are instead required to conform to normal standards of reasonableness under general principles of tort law. Id. at 613-14, 781 P.2d at 1143. Appellant thus has the burden of establishing a duty in some way other than Smith and Pollard's status as landowners.

Appellant contends that Smith and Pollard are liable for Nicholas' injuries through the unreasonable actions of their agents, Geoffrey, Richard and James. The record on appeal indicates that genuine factual issues remain concerning whether an agency relationship existed. Geoffrey testified that Smith authorized Richard to sign a lease agreement on her behalf and to allow Robin and Robert to live in the house. Smith also authorized Richard and James to maintain the premises for several years. James paid the regular expenses on the house such as insurance, taxes and for a time the utilities. In addition, Smith consented to placing Geoffrey on the property to help maintain the premises. These actions suggest that Smith authorized the family to maintain and manage the house on her behalf. A genuine factual issue remains concerning the extent of the authority of Richard, James and Geoffrey to act on Smith's behalf and to maintain the property.

The district court correctly concluded that Pollard was not liable. Pollard's only involvement in this matter is her status as joint owner of the home. No evidence suggests that she played

any part in the maintenance of the home or in the events leading to the dog bite or that she authorized anyone to act on her behalf. Pollard thus has no liability for Nicholas' injuries.

The record on appeal also contains conflicting evidence concerning whether Smith, through her alleged agents, had a duty to protect third parties from dog bites. Under *Wright,* liability only lies if, under all of the circumstances of the case, the landowner takes affirmative steps to assume a duty. 105 Nev. at 616, 781 P.2d at 1145. The district court ruled that appellant had presented no evidence to establish that Smith had taken any affirmative steps to assume a duty.

The record on appeal demonstrates that Richard allowed Robin and Robert to keep a dangerous dog on the premises even though the fence was only three feet high and was poorly maintained. In the spot where the dog escaped, the fence bowed and was only two feet high. In addition, Geoffrey knew that the dog had shown dangerous propensities because he had witnessed the dog bite a visitor without provocation. Finally, Geoffrey, Richard and James assumed responsibility for maintaining the premises. Under these circumstances, a factual dispute exists concerning whether Smith, through her agents, assumed a duty to protect third persons from dog bites.

## CONCLUSION

Because the record contains conflicting evidence concerning an agency relationship and the duty of care, we reverse the district court's order granting summary judgment as to Smith. We affirm the district court's decision as to Pollard. We remand this matter for further proceedings consistent with this opinion.