Argued and submitted February 15, affirmed May 17, 1995

Louise WHITLOW,
*Appellant,*

*v.*

Jack H. JONES
and Patricia A. Jones,
Trustees of the Jones Revocable Trust,
*Respondents.*

(93-0760-L-3; CA A84362)

895 P2d 324

Michael Brian argued the cause and filed the briefs for appellant.

Timothy C. Gerking argued the cause for respondents. With him on the brief was Brophy, Mills, Schmor, Gerking & Brophy.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Plaintiff appeals from a summary judgment for defendants in a "trip and fall" negligence case. We affirm.

Defendants are owners of the Brookside Townhouse Apartments, an apartment complex located just outside of Phoenix in Jackson County. In March 1992, plaintiff was injured when she tripped and fell on the public sidewalk adjacent to the apartment complex. The accident occurred where the sidewalk intersects the driveway entrance to the complex's parking lot.

Plaintiff filed a personal injury action, alleging: (1) defendants or prior owners of the apartment complex had constructed the sidewalk and driveway; (2) vehicle traffic going in and out of the parking lot had caused the sidewalk segments "to settle and become misaligned"; (3) plaintiff was injured when she tripped over an uneven segment of pavement where the driveway crossed the sidewalk; and (4) defendants were responsible for her injuries because they negligently failed to maintain and repair the sidewalk.

Defendants moved for summary judgment, invoking the common law rule limiting a landowner's liability for injuries caused by dangerous conditions on an adjoining public sidewalk:

> " 'In the absence of statute[,] the owner or occupant of adjoining property is under no obligation to repair the street in front of his premises and is not liable for injury resulting from a defect therein which was not the result of his *affirmative act* or that of his agents or servants, but he owes a duty to the public to do no *affirmative act* that will create a dangerous condition in the street.' " *Marsh v. McLaughlin et ux*, 210 Or 84, 88, 309 P2d 188 (1957) (quoting 63 CJS Municipal Corporations § 860b) (emphasis supplied).[1]

Defendants argued that, because they had not engaged in any "affirmative acts," they could not be liable under *Marsh's*

---

[1] Although the parties appear to disagree about the particular legal status of the adjacent roadway and, in particular, about whether Jackson County had an obligation to maintain the sidewalk, the parties do agree that neither Jackson County nor the City of Phoenix had enacted legislation imposing liability on abutting landowners for injuries occasioned by their failure to make necessary repairs to a sidewalk. In the absence of such legislation, the common law rule applies. *Marsh*, 210 Or at 90-92.

standard. In particular, they asserted that they had not installed or replaced the misaligned segment of the sidewalk, and that the only other activity plaintiff's complaint ascribes to them — vehicle traffic in and out of the complex by their tenants and others — could not, as a matter of law, support liability. The trial court agreed, granted the motion, and entered judgment in defendants' favor.

In assigning error to that ruling, plaintiff asserts that the flow of vehicle traffic by defendants' tenants and other invitees over the sidewalk/driveway "cut" is precisely the kind of affirmative act contemplated in *Marsh*. She argues, in particular, that: (1) defendants' use of the sidewalk cut as a driveway entrance for their business constituted a "special use" of the sidewalk for their sole benefit; and (2) an abutting landowner who engages in such special use of the sidewalk owes a duty to the public to maintain the sidewalk in a reasonably safe condition for pedestrians lawfully using it. *Mathison v. Newton*, 251 Or 362, 369, 446 P2d 94 (1968).[2]

Defendants respond that plaintiff is stretching the special use exception beyond its intended limits, because that exception applies only when a landowner creates some artificial condition or structure on an adjoining sidewalk. Defendants correctly observe that every Oregon case addressing the special use rationale involves an artificial construction, such as a sidewalk elevator or trap door. *See Mathison*; *Umphlette v. City of Silverton*, 154 Or 156, 59 P2d 244 (1936); *Mitchell v. Ausplund*, 150 Or 572, 47 P2d 256 (1935). Moreover, defendants argue, use of sidewalk cuts as driveway entrances is entirely ordinary, reasonable, and foreseeable. Consequently, such use cannot be deemed "special." In so arguing, defendants refer to authority from other jurisdictions:

> "Certainly, in this day and age, the use of a sidewalk as a driveway to the abutting property is not a peculiar or unusual use of such sidewalk. It is one of the ordinary and accustomed uses for which sidewalks are designed." *Winston v. Hansell*, 160 Cal App 2d 570, 576, 325 P2d 569, 573 (1958).

---

[2] We are unaware of any authority addressing the relationship between *Marsh's* "affirmative act" language and *Mathison's* "special use" language. However, both parties propose, and we agree, that the latter is merely a subspecies of the former.

*See also Votsis v. Ward's Coffee Shop, Inc.*, 217 Va 652, 231 SE2d 236 (1977) (ordinary vehicular traffic across sidewalk to enter and leave parking area was normal, proper and incidental to use of abutting property and, therefore, was not a "special use"); *City of Evansville v. Cunningham*, 138 Ind App 39, 202 NE2d 284 (1964), *mod* 247 Ind 47, 211 NE2d 171 (1965) (same).

Plaintiff counters with her own favorable authority from other jurisdictions, which have applied the special use exemption to include any use that results in a special advantage to a commercial property owner. *District of Columbia v. Texaco, Inc.*, 324 A2d 690 (DC App 1974), exemplifies the reasoning of those cases. There, as here, the plaintiff pedestrian was injured when she fell because of an irregularity where the sidewalk crossed the driveway entrance to the defendant's service station. The court concluded that the defendant could be held liable if it was shown that the station's use of the sidewalk as a driveway entrance caused the sidewalk's deterioration.[3] In so holding, the court found that because the gas station derived private commercial benefit from its use of the sidewalk, its use constituted a "special use." *Id.* at 691. *See also Loewe v. City of Le Sueur*, 277 Minn 94, 151 NW2d 777 (1967) (jury could find large food producer liable for injuries caused by defect in sidewalk when it used sidewalk "for its own purposes").

■ Thus, we are presented with a battery of authority from other jurisdictions, either endorsing or rejecting an expansive view of the special use doctrine. We believe, however, that this case can and should be decided on authority found closer to home: *Fitzwater v. Sunset Empire, Inc.*, 263 Or 276, 502 P2d 214 (1972). In *Fitzwater*, the plaintiff slipped and fell on ice that had accumulated on the sidewalk in front of a restaurant. The plaintiff brought a negligence action against the restaurant and argued that the common law rule — that landowners are under no obligation to keep the public sidewalks free of ice and snow — was inapplicable when the sidewalk was a means of ingress to and egress from the

---

[3] The pedestrian had sued for and obtained a judgment against the District of Columbia, as the municipality that controlled the sidewalk. *District of Columbia v. Texaco* arose out of the District's subsequent action against the service station seeking indemnification for that judgment.

defendant's business. *Id.* at 279. In rejecting that argument and addressing authority cited by the plaintiff, the court said:

> "In *Quigley['s Pharmacy, Inc. v. Beebe*, 261 A2d 242 (DC App 1970)], the plaintiff had left defendant's premises and was walking to a mailbox when she fell because of a defect in the sidewalk. The court found that defendant had no common law duty to keep the sidewalk in repair when he made no special use of the sidewalk. While the court did indicate by dictum that special use could include ingress and egress to defendant's store, *we would reject that proposition because public sidewalks are always used for ingress and egress to business places.*" *Id.* at 281 (emphasis supplied).

Thus, although a business establishment derives special advantage from the use of a sidewalk by its business invitees for ingress to and egress from the business, that use is not a special use for liability purposes, because it is customary and normal. For liability purposes, "specialness" is a function of novelty, not advantage.

Although *Fitzwater's* discussion could be regarded as *dicta*, we believe that its analysis is correct. That analysis accords with what we regard as the better-reasoned view from the law of other jurisdictions:

> "An extraordinary use of an adjacent sidewalk arises when, in the light of all the circumstances of the particular case, such use is not only for the personal convenience and benefit of the abutting occupant but is also of such a nature, in kind or in degree, that a condition is created which interferes with, and is in derogation of, a normal use of the sidewalk by the public. * * * The extraordinary use may stem from a kind of use which is in derogation of a sidewalk's normal function as an aid to travel, such as the installation of a manhole for the reception of coal, a private cellarway, vault, a raised approach or passageway leading to a building entrance, etc. An extraordinary use may also arise from acts which, though intrinsically consistent with the usual function of a sidewalk or driveway when conducted in a normal manner and context, lose their customary status because they are performed in such unusual volume and under such conditions that they unduly interfere with a safe and normal use of the affected portion of the sidewalk." *Graalum v. Radisson Ramp, Inc.*, 245 Minn 54, 71 NW2d 904, 909 (1955).

■ Applying that analysis to this case, and viewing the record in the light most favorable to plaintiff, *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978), defendants' use of the sidewalk as a driveway entrance was not extraordinary, either in kind or in degree. Plaintiff has not alleged, or shown, that defendants installed an artificial condition on the sidewalk that is in derogation of a sidewalk's normal function. Nor has she alleged or shown that defendants' use of the sidewalk as a means of vehicular access to their complex's parking lot was in such volume or under such conditions as to render it extraordinary.

There was no special use. Accordingly, the trial court properly allowed summary judgment.

Affirmed.