945 P.2d 945 (1997)
Rosemarie WISEMAN, Appellant,
v.
Francis R. HALLAHAN and John C. Hallahan dba Colonial Inn Hotel & Casino, Respondents.
No. 27333.
Supreme Court of Nevada.
October 1, 1997.
Osborne Law Office, Chtd. and Patty Petersen, Reno, for Appellant.
Laxalt & Nomura, Ltd. and Katherine J. MacKenzie, Reno, for Respondents.

OPINION
MAUPIN, Justice:
On February 20, 1993, Rosemarie Wiseman ("Wiseman"), an employee with State Farm Insurance Company, traveled to Reno by bus to be a guest at the Colonial Inn Hotel and Casino ("Colonial"). That afternoon, when the bus arrived at the Colonial, the sidewalk in front of the Colonial was clean. Shortly after her arrival, Wiseman and a companion walked downtown and visited several casinos. Wiseman had no difficulty negotiating the sidewalks in her tennis shoes even though there were intermittent accumulations of snow and slush.
The next morning, when the bus driver positioned his bus at the Colonial's front entrance, he noticed patches of ice all over the sidewalk. The bus driver testified that he did not feel a need to alter the condition of the sidewalk because he felt that the passengers could safely negotiate the sidewalk "if they walked with caution." Wiseman slipped and fell while crossing the city-owned sidewalk as she left the casino to board the bus. Although the driver had warned several passengers about the ice as they were *946 boarding, he was unable to warn Wiseman in time. The driver testified that, after he helped Wiseman to her feet, a woman behind the registration desk stated that an employee had been instructed earlier to scrape and salt the sidewalk.
It had been customary since 1978 for the Colonial cleaning staff to clean the city-owned sidewalk each morning, starting with the most heavily traveled area in front of the building. The cleaning staff would typically begin cleaning the front entrance around 8:30 a.m. to accommodate customers utilizing bus transportation. According to the evidence at trial, one of the housekeepers had planned to train a new employee on proper maintenance of the sidewalk that day, but the work was not completed because Wiseman's bus had arrived early. It was further learned that the housekeeper had actually taken the trainee to the area where Wiseman fell, that the ice-melting equipment and "caution cones" were ready but not used because the guests were already boarding, and that the housekeeper saw the ice and saw Wiseman slip and fall.
As a result of injuries sustained from the fall, Wiseman was unable to return to work and subsequently underwent two shoulder surgeries. Despite her seventeen-year tenure with State Farm, the insurance company fired her because she was out of work for over one year.

DISCUSSION

The Common Law "No Duty" Rule
In Nevada, "[a]n abutting property owner or occupant is under no duty to keep the sidewalk in front of his property in a reasonably safe condition." Major v. Fraser, 78 Nev. 14, 17, 368 P.2d 369, 369 (1962). Under Fraser, liability will not lie unless the abutting property owner created the defect in a manner "independent of and apart from the ordinary and accustomed use for which sidewalks are designated." Id. at 18, 368 P.2d at 371.
We reaffirmed our adoption of the common law "no duty" rule in Herndon v. Arco Petroleum Co., 91 Nev. 404, 536 P.2d 1023 (1975). In Herndon, a pedestrian was injured when he slipped on an icy portion of a service station's private driveway which crossed a public sidewalk. Id. at 405, 536 P.2d 1023. There we held that an abutting property owner or occupier is under a duty to maintain that portion of a public sidewalk put to his special use in a reasonably safe condition if his special use or that of his customers creates the hazard. Id. at 406, 536 P.2d at 1024. In so holding, we observed:
In the case at hand, the defendants made special use of the portion of the driveway over the public sidewalk where Neal Herndon claims that he slipped and fell. Moreover, it apparently is his contention that the hazard he encountered was not the result of a natural accumulation of ice and snow, but, rather the consequence of vehicular traffic by the defendants, employees of the defendants, or their customers. These special circumstances, if established to the satisfaction of the finder of facts, could justify a finding of negligence sufficient to warrant recovery.
Id. at 406, 536 P.2d at 1024.
A majority of jurisdictions have adopted the common law "no duty rule"the only limitations being whether a special use has increased the risk of harm or if an abutting property owner has a duty by statute or ordinance to keep a public sidewalk in a safe condition. Our decision in Herndon reaffirms our adoption of the majority position.
In Bittle v. Brunetti, 750 P.2d 49, 51-52 (Colo.1988), the Colorado Supreme Court found no statutory or common law duty to clear natural accumulations of snow and ice on public sidewalks abutting private property. There, a passer-by fell and sustained injury on an abutting sidewalk. The court concluded that, absent a special relationship between a pedestrian and a landowner, the landowner was under no legal duty to take affirmative measures to present harm to the pedestrian. Id. at 53. A similar result was reached in Devine v. Al's Lounge, Inc., 181 Mich.App. 117, 448 N.W.2d 725 (1989), where the injured party was a business invitee. Here, Wiseman was a guest of Colonial and, under traditional tort analysis, would be considered an invitee. In Nevada, however, this *947 court has discarded variations in the duties owed to invitees, licensees and trespassers. See Moody v. Manny's Auto Repair, 110 Nev. 320, 871 P.2d 935 (1994); Turpel v. Sayles, 101 Nev. 35, 692 P.2d 1290 (1985). Thus, that Wiseman was a guest of Colonial is not determinative of the duty issue here.
In Whitlow v. Jones, 134 Or.App. 404, 895 P.2d 324 (1995), the court held that the special advantage a business establishment derived from the use of the city-owned sidewalk for ingress and egress by its business invitees did not give rise to a "special use" for liability purposes. Id. at 326. Rather, the court considered such use normal and customary. Id.
Courts are reluctant to find liability in these situations absent an unnatural accumulation or condition. In Rose v. United States, 929 F.Supp. 305 (N.D.Ill.1996), a pedestrian allegedly slipped and fell on an accumulation of ice and snow on a city-owned sidewalk outside the U.S. Post Office. Even though the accumulation was "bumpy," "lumpy" and "hard," the pedestrian's failure to show that the snow and ice was an unnatural accumulation precluded recovery. Id. at 308.
We conclude that, unlike the situation in Herndon, there was no special use of the sidewalk by Colonial that created a hazard beyond normal atmospheric conditions. In Herndon, the ingress and egress of customers caused an abnormal accumulation of ice and slush. Here, there was no evidence that the use of the sidewalk by the Colonial or its customers caused the dangerous condition. Although we held in Moody that determinations of premises liability must depend primarily upon whether the owner or occupier of land acted "reasonably under the circumstances", that duty was applied to an on-premises accident. 110 Nev. at 333, 871 P.2d at 943. Here, Wiseman concedes that she had no evidence that Colonial did anything itself to increase her risk of harm. There was also no evidence that the condition that caused her fall was the consequence of an unnatural accumulation of ice or snow caused by the traffic pattern of the other guests between the hotel and the curb where the bus was located.
Wiseman argues that, if the Colonial did not have a duty to keep the abutting city-owned sidewalk in a safe condition, it inadvertently assumed that duty by maintaining the sidewalk over a seventeen-year period. In this connection, Wiseman maintains that recent Nevada authority has begun to erode the "no-duty" rule. Her contentions are based upon our rulings in Wright v. Schum, 105 Nev. 611, 781 P.2d 1142 (1989), and Harry v. Smith, 111 Nev. 528, 893 P.2d 372 (1995). Both cases involved off-premises injuries sustained when pet dogs escaped through inadequately maintained fencing. In both cases we held that a landowner may be held liable if, under all of the circumstances, it is shown that affirmative action to assume a duty has been taken. Harry, 111 Nev. at 534, 893 P.2d at 375. The Colonial argues that Wright and Harry are clearly distinguishable from the case at bar. We agree. Most importantly, the two cases involve off-premises injuries caused by dangerous on-premises conditions. Under Wright, a landlord does not have a duty to third persons if he simply has knowledge and acquiesces to a dangerous condition. Wright, 105 Nev. at 615, 781 P.2d at 1145. Colonial argues that, although it intended to clear the sidewalk on the day in question, it did not affirmatively take steps to remove the snow from the public sidewalk on the morning that Wiseman was injured. Wiseman's injuries were the result of naturally occurring atmospheric conditions. Thus, the cause of Wiseman's injuries differs substantially from injuries that may flow from a landowner who is negligent with respect to conditions that are allowed to exist on-premises rather than off-premises.

The Restatement (Second) of Torts § 323 (1965)
The district court sua sponte relied on the Restatement (Second) of Torts section 323 in granting Colonial's motion for a directed verdict.
Restatement (Second) of Torts section 323 reads as follows:
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary *948 for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
(a) his failure to exercise such care increases the risk of such harm, or
(b) the harm is suffered because of the other's reliance upon the undertaking.

(Emphasis added.)
We are asked to decide whether, on these facts, the Restatement (Second) of Torts section 323 is the appropriate test in determining the standard of care for an assumption of duty. Wiseman argues that the standard as set forth under the Restatement is too low and, in its stead, proffers that the proper test should be more general, to wit: "whether the parties acted reasonably under all of the circumstances."[1]
Contrary to Wiseman's contentions that the Restatement (Second) of Torts section 323 stands as an "arbitrary bar" to her recovery, we conclude that the district court's reliance on the Restatement is completely consistent with our prior holding in Herndon. Absent a condition created by the landowner's special use, absent other action taken increasing the risk of harm to third parties, and absent evidence of reliance by Ms. Wiseman, the general "no-duty" rule must be applied.
Wiseman relies on two New Jersey decisions where the common law "no liability" rule was discarded. In Stewart v. 104 Wallace Street, Inc., 87 N.J. 146, 432 A.2d 881, 883 (1981), the court observed that "a plaintiff has a cause of action against a commercial property owner for injuries sustained on a deteriorated sidewalk abutting that commercial property when that owner negligently fails to maintain the sidewalk in reasonably good condition." Likewise, in Mirza v. Filmore Corporation, 92 N.J. 390, 456 A.2d 518, 521 (1983), the court held that the test of liability for conditions on abutting public property is "whether a reasonably prudent person, who knows or should have known of the condition, would have within a reasonable period of time thereafter caused the public sidewalk to be in a reasonably safe condition."
In rejecting the New Jersey approach, we note that only two states have adopted this standard in lieu of the common law "no duty" rule.[2] We hold that the Restatement (Second) section 323 properly articulates the applicable doctrineit lessens the harshness of the common law rule by imposing liability where the property owner's negligence increases the risk of harm, or if the injuries sustained were the product of a reliance on the owner's assumption of duty.
While section 323 of the Restatement does not specifically address the "special use" doctrine as that concept is discussed in Herndon, id. at 405, 536 P.2d at 1025, that doctrine does retain its vitality and can be applied in harmony with our adoption of the Restatement position.
Wiseman has provided no evidence that implicates liability under the Restatement (Second) of Torts section 323. The Colonial has neither increased the risk of harm, nor was Wiseman injured in her reliance on the Colonial to clear the sidewalk. Further, under Herndon, the Colonial did not create a hazard by a special use of the sidewalk. Nor did the Colonial create a defect in a manner "independent of and apart from the ordinary and accustomed use for which sidewalks are designated." Fraser, 78 Nev. at 18, 368 P.2d at 371.

CONCLUSION
For the foregoing reasons, we conclude that a directed verdict was warranted and affirm the judgment entered by the district court.
SHEARING, C.J., and YOUNG, J., concur.
*949 ROSE, Justice, dissenting:
The majority has missed the opportunity to adopt a rule that would conform with a business consumer's expectations and would examine the reasonableness of the actions of a business and its injured patron, whether the accident occurs on the business property or the immediately adjacent sidewalk.
For decades, Nevada has held to the rule that an abutting owner has no duty to keep the sidewalk immediately in front of his or her property in a reasonably safe condition. Major v. Fraser, 78 Nev. 14, 368 P.2d 369 (1962). While still the majority rule in the United States, I would prefer to have a less definitive rule that permits the consideration of the reasonableness of the landowner's and injured patron's actions or omissions whether the injury occurs on or immediately adjacent to the business property. In ascertaining landlord liability, we have discarded the use of the status that a person occupied when on a business's property in favor of a test which looks to the reasonableness of the actions of the landlord and the injured party. Moody v. Manny's Auto Repair, 110 Nev. 320, 871 P.2d 935 (1994). I see no reason why this same approach cannot be taken with injuries occurring on property immediately adjacent to a business when used by patrons of that business. Such an approach has been taken by two state court jurisdictions, New Jersey and Pennsylvania. Stewart v. 104 Wallace Street, Inc., 87 N.J. 146, 432 A.2d 881 (1981); Starr v. Philadelphia, 191 Pa.Super. 559, 159 A.2d 10 (1960).
Since the majority of this court has no appetite to change the landlord's "no duty" rule espoused in Fraser, I would recommend that we keep it as a general rule, but recognize several exceptions. First, I would impose that duty on an owner whenever it is required by the municipal law where the land is located. Second, I would require a landowner or occupier who is conducting a business on the property to keep in reasonably safe condition the property immediately adjacent that is used for egress and ingress by the business patrons. This would be the same standard used in Moody for the property owned by the business, but extended to immediately abutting property used by the patrons. It would not be as expansive as the New Jersey rule because it would include only injuries on property immediately adjacent and used for business access by the patrons. I would classify a business and its customers as a sufficiently special relationship or situation to justify an exception to the "no duty" general rule.
I do not believe that adopting the New Jersey approach or recognizing the above exceptions to the general rule would impose an undue burden upon a business; such action would meet the reasonable expectations of the business patron. Most business owners are required to keep the sidewalks adjacent to their building in a safe condition by municipal ordinance. Good business practice and self-interest would also motivate a business to keep the area of egress and ingress safe and accessible to the public. Imposing civil liability on a business for failing to keep an area of public access immediately adjacent to the business reasonably safe would only be recognizing the owner's legal obligation and what a good business should do in its own self-interest. In the instant case, the Colonial undertook the task of clearing the snow from the sidewalk when necessary, but was tardy in doing it on the day of the accident. It certainly realized the benefits of keeping the entrance cleared for patrons.
The consumer entering a business often does not know where municipal ownership ends and the business property begins. Many casinos incorporate the municipal sidewalk into their own entrance design, and the entrance is an important tool to attract patrons. Usually businesses operating in a shopping center have a pad upon which the business structure is built. While the entrance and the parking lot may appear to be the property of the business, it is usually that of the shopping center owner or the tenants' association. Most consumers would be at a loss to identify exactly when they have entered the casino or food market's property. But one thing they do expect is that the business will keep reasonably safe those areas of access, whether owned by a municipality, the shopping center or the business.
I would adopt the New Jersey rule or the above stated exceptions to our "no duty" *950 rule, and remand this case to the district court to determine if Colonial had actual or constructive notice of an unsafe condition on the sidewalk immediately adjacent to its property that was used by patrons and failed to take appropriate action, and whether that unsafe condition proximately caused Wiseman's injuries.
SPRINGER, Justice, dissenting:
A directed verdict was not warranted in this case.
I agree with Justice Rose that Wright v. Schum, 105 Nev. 611, 781 P.2d 1142 (1989), of itself, is not authority to support liability in this case because Schum involved off-premises injuries caused by dangerous on-premises conditions; however, in Schum, we ruled that a landlord could be held liable for negligent conduct that was not related to landlord status. The question in Schum was "not whether Schum is liable to Jason as a landlord, but rather whether he is liable `as other persons' for the exercise of due care in not subjecting Jason to an unreasonable risk of harm." Id. at 614, 781 P.2d at 1143 (emphasis in original) (quoting Sargent v. Ross, 113 N.H. 388, 308 A.2d 528, 534 (1973)). The rule adopted in Schum was that if there was evidence that the landlord, independent of his being a landlord, "failed to exercise due care in subjecting Jason and others to an unreasonable risk of harm," then tort liability could attach. Schum, 105 Nev. at 614, 781 P.2d at 1143.
In Schum, the landlord's duty of due care arose from the injured party's reliance on the landlord's promise to make the condition safe rather than upon the landlord's status as property owner. Similarly, the jury in the instant case is not limited to consideration of the Colonial's status as property owner in determining whether it owed a duty of care to the appellant in this case. Although there is no evidence here of the kind of reliance that was present in Schum, a reasonable jury could find that the Colonial owed a duty of due care to its bus-boarding patrons under the circumstances of this case. The kind of injury suffered by Ms. Wiseman was foreseeable under the circumstances and could have been avoided had the Colonial not departed from its ordinary practice of maintaining safe passage to and from its busses.
In the case at bar, the Colonial had apparently recognized for some time the necessity for maintaining safe loading and unloading of its buses; and, in order to provide for the safety of its invitees, it had adopted procedures which involved off-premises snow and ice removal. On the day of Ms. Wiseman's injury, the Colonial failed to abide by its own, self-imposed standards for guest safety. To my way of thinking, a jury could properly have found that by failing to abide by its adopted standards of safety, the Colonial failed to exercise due care under the circumstances and subjected its bus passengers to an unreasonable risk of harm. For this reason, I say that it was error to direct a verdict in the Colonial's favor.
NOTES
[1] The dissent agrees with this proposition, citing Moody. Again, however, Moody itself stresses that this duty applies to injuries occurring on-premises. It does not reach the policy questions posed under the "no-duty" rule.
[2] Citing Mirza, the Supreme Court of Colorado noted in Bittle, that only New Jersey and possibly Pennsylvania have discarded the "no duty" rule. Bittle, 750 P.2d at 52.