Litigants must adhere to the spirit of the pretrial procedure and are bound by a pretrial order to which no exception has been taken. *Cotton v. Ostroski*, 250 Neb. 911, 554 N.W.2d 130 (1996).

We agree with Schulte that the certificate attached to the warrant was dated March 6, 2013, the day trial began. However, the warrant itself was issued on January 10, nearly 2 months before trial began. Thus, Schulte had plenty of time prior to the day of trial to notify Aguilar of the existence of the warrant and her intention to offer it at trial. Accordingly, we find no error in the district court's decision to exclude the exhibit from evidence at trial.

## CONCLUSION

We conclude that the district court did not abuse its discretion in awarding the parties joint custody of their minor child. We also find no abuse of discretion in the court's decision allowing Aguilar to travel to Mexico with the child, and Schulte was properly ordered to cooperate in obtaining a passport and the necessary travel documents for the child. Finally, the district court did not err in sustaining Aguilar's objection to the certified copy of the arrest warrant. Accordingly, we affirm the decision of the district court.

Affirmed.

---

Gary Henderson, appellant, v. Heath Smallcomb and Night Life Concepts, Inc., doing business as The Loft, Night Life Concepts, Inc., doing business as Cunningham's Journal, appellees.

___ N.W.2d ___

Filed June 17, 2014.    No. A-13-093.

1. **Directed Verdict: Appeal and Error.** In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence.

2. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

3. **Jury Instructions.** Whether jury instructions given by a trial court are correct is a question of law.

4. **Directed Verdict: Evidence.** A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law.

5. **Municipal Corporations: Streets and Sidewalks: Property: Liability.** Historically, under the common law, cities were responsible for the care and condition of sidewalks within municipal boundaries, and no duty devolved upon an abutting owner to keep the sidewalk adjacent to such owner's property in a safe condition.

6. **Streets and Sidewalks: Property: Liability: Notice: Words and Phrases.** Under the "sidewalk rule," the owner of property which abuts a public sidewalk is liable for injuries that are caused by a condition on the sidewalk, if the owner has been notified by the city of the dangerous sidewalk condition and fails to act.

7. **Trial: Evidence: Words and Phrases.** The concept of "opening the door" is a rule of expanded relevancy which authorizes admitting evidence which otherwise would have been irrelevant in order to respond to (1) admissible evidence which generates an issue or (2) inadmissible evidence admitted by the court over objection.

8. **Trial: Evidence.** The "opening the door" rule is most often applied to situations where evidence adduced or comments made by one party make otherwise irrelevant evidence highly relevant or require some response or rebuttal.

9. **Trial: Evidence: Words and Phrases.** "Opening the door" is a contention that competent evidence which was previously irrelevant is now relevant through the opponent's admission of other evidence on the same issue.

10. **Trial: Evidence: Appeal and Error.** The admission or exclusion of evidence is generally reviewed for an abuse of discretion.

11. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Buffalo County: John P. Icenogle, Judge. Affirmed.

Vincent M. Powers, of Vincent M. Powers & Associates, for appellant.

Daniel M. Placzek and, on brief, Sonya K. Koperski, of Leininger, Smith, Johnson, Baack, Placzek & Allen, for appellee Heath Smallcomb.

Nicholas R. Norton and Jeffrey H. Jacobsen, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellee Night Life Concepts, Inc.

Inbody, Chief Judge, and Moore and Riedmann, Judges.

Inbody, Chief Judge.

## INTRODUCTION

This case involves an accident which occurred when Gary Henderson fell and sustained an injury as he left an establishment known as Cunningham's Journal, owned by Night Life Concepts, Inc., doing business as The Loft, Night Life Concepts, Inc., doing business as Cunningham's Journal (Night Life). Night Life leased the building from Heath Smallcomb. Henderson filed a negligence action against both Night Life and Smallcomb, and during a jury trial on the matter, the Buffalo County District Court granted Night Life's motion for directed verdict and the jury returned a verdict in favor of Smallcomb.

## STATEMENT OF FACTS

Henderson, who was 75 years old at the time of trial, testified that in 2006, he was retired and living in Kearney, Nebraska, maintaining a rental property that he rented out to college students. Henderson testified that he had had several medical procedures prior to the incident in question and had undergone several surgeries and medical appointments prior to the incident, including a right knee replacement in the late 1970's or early 1980's, a spleen removal, a right-shoulder rotator cuff repair and neck fusion, open heart surgery, a laminectomy, a low-back fusion, and an appointment at an arthritis treatment center.

Every Tuesday evening, he and a group of friends met at a local Kearney establishment for dinner and then would go downstairs to Cunningham's Journal to play pool and have a drink. Henderson testified that he had played pool at Cunningham's Journal for a year or two. Henderson indicated that on April 18, 2006, the group followed its normal routine. Henderson parked his car in the Kearney city lot on the west side of Cunningham's Journal, entering the building through

the front door on 23d Street. Henderson testified that he entered the building by stepping up onto an elevated concrete landing or walking area and then taking additional wooden steps. Henderson had a drink and played pool at Cunningham's Journal until about 1 a.m. on April 19. As Henderson was leaving Cunningham's Journal, he descended the wooden stairs to the concrete landing and tripped on the last step "where you go down to the city sidewalk." Henderson testified that he tripped on a lip in the concrete landing and fell, hitting the concrete with his knees, elbow, wrists, and face. Henderson testified that he did not recall some of what happened after he fell. Henderson got a ride home and testified that he did not recall what happened until he awoke at around 7 a.m., at which point he first actually thought that he had fallen down his basement stairs.

Smallcomb testified that in 1995, he purchased the building where Cunningham's Journal is located, and that he ran Cunningham's Journal until 2003, when he sold that business to Night Life, but still retained ownership of the building. Smallcomb explained that Night Life now rents the space where Cunningham's Journal is and has maintained the business. Smallcomb explained that there is an elevated sidewalk or landing that is used to reach the wooden stairs which lead up to the building. Smallcomb testified that he knew that the concrete on the landing was not flush, that he did not repair the concrete, and that he did not ask Night Life to repair the concrete. Smallcomb estimated that the gap in the concrete was about 2 inches deep. Smallcomb testified that he did not know the deviation in the concrete was a problem or a hazard.

Smallcomb testified that he believed the sidewalk, raised concrete landing, and wooden steps belonged to the city of Kearney and that he had not received any notice from the city that repairs were necessary. Smallcomb testified that the property had changed little since he purchased the building in 1995. Smallcomb explained that he was familiar with the building before he owned it and that the raised concrete landing and wooden stairs had been there since the 1980's. Smallcomb did not know by whom, or for what reason, the

concrete landing was constructed. Smallcomb testified that since the lease of the property in 2003 to Night Life, repairs were made to the front steps and "handicap ramp" and interior improvements had been made. Smallcomb testified that Night Life had exclusive control of the property at the time of Henderson's fall and that he visited the property only every few months. Smallcomb also indicated that the landing leading up to the stairs benefited the property in that customers were able to enter the building, but that sidewalks in front of any business were a benefit.

Mike Anderson, the owner of Night Life, testified that he bought the Cunningham's Journal business from Smallcomb in 2003. Anderson testified that customers step onto the landing or elevated sidewalk and then ascend the wooden steps into the building. Anderson testified that he did not make any repairs to the concrete from the time that he leased the building until the date of Henderson's fall and did not ask Smallcomb to make any repairs at any time. Anderson further testified that he had never received any notice from the city of Kearney that sidewalk repairs were necessary. Anderson testified that exterior repairs had been made to the building, such as repairs to the wooden stairs and changes to the front facade and to the "handicap ramp."

Anderson testified that on the night of the fall, he was closing the establishment when someone indicated that a man had fallen. Anderson explained that Henderson was alert and standing on the sidewalk when Anderson went outside, but did have some blood on his face. Anderson testified that Henderson explained to him that he had missed a step and fallen.

At the conclusion of Anderson's testimony, counsel for Henderson made an offer of proof regarding Anderson's deposition testimony that since Henderson's fall, Anderson had hired someone to add concrete to the landing and it was now even. Counsel argued:

> [The offer of proof] would be the evidence, and I believe that when . . . counsel asked the question as to any repairs being made to the exterior, the full complete answer would include that repair, that he had knowledge

of that repair being made. It didn't matter if the landlord made it.

Objections were made to the offer of proof, and the district court sustained those objections based upon a previous motion in limine which addressed and excluded any testimony regarding repairs made to the landing since Henderson's fall.

Thereafter, Night Life and Smallcomb made motions for directed verdicts. The district court found that the evidence reflects that the property where Henderson fell, which included the steps and the landing, "is property that is actually located on [c]ity of Kearney sidewalks." The court concluded that Night Life did not owe a duty to Henderson to make sure that the sidewalk was in proper repair and dismissed Night Life from the proceedings. The motion for directed verdict as to Smallcomb was overruled.

Smallcomb presented evidence and again made a motion for directed verdict which was overruled by the district court. At the jury instruction conference, Henderson objected to the district court's jury instruction on a preexisting condition and offered a proposed jury instruction in its place, marked as an exhibit. The district court did not accept the proposed jury instruction and overruled all objections to the exhibit. The case was submitted to the jury, which unanimously found that Henderson had not met his burden of proof to establish that Smallcomb was negligent in causing Henderson to fall, and the court entered judgment in favor of Smallcomb.

## ASSIGNMENTS OF ERROR

Henderson assigns that the district court erred in granting Night Life's motion for directed verdict, in failing to find that Smallcomb "opened the door" with respect to questioning regarding repairs made to the concrete landing after Henderson's fall, and in failing to give his proposed jury instruction regarding preexisting conditions.

## STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on

behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Wulf v. Kunnath*, 285 Neb. 472, 827 N.W.2d 248 (2013); *Lesiak v. Central Valley Ag Co-op*, 283 Neb. 103, 808 N.W.2d 67 (2012).

[2] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *Simon v. Drake*, 285 Neb. 784, 829 N.W.2d 686 (2013).

[3] Whether jury instructions given by a trial court are correct is a question of law. *Kuhnel v. BNSF Railway Co.*, 20 Neb. App. 884, 834 N.W.2d 803 (2013), *reversed on other grounds* 287 Neb. 541, 844 N.W.2d 251 (2014).

## ANALYSIS

*Motion for Directed Verdict.*

Henderson assigns that the district court erred by granting Night Life's motion for directed verdict.

[4] A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law. *American Central City v. Joint Antelope Valley Auth.*, 281 Neb. 742, 807 N.W.2d 170 (2011).

[5,6] Historically, under the common law, cities were responsible for the care and condition of sidewalks within municipal boundaries, and no duty devolved upon an abutting owner to keep the sidewalk adjacent to such owner's property in a safe condition. See *Rod Rehm, P.C. v. Tamarack Amer.*, 261 Neb. 520, 623 N.W.2d 690 (2001). In contrast, the "sidewalk rule" recognizes that this common-law rule has been abrogated by city ordinance or by statute. See Neb. Rev. Stat. § 15-734 (Reissue 2012). Section 15-734 further provides, however, that an abutting property owner is liable for injuries sustained as a result of such owner's failure to

keep and maintain the sidewalk in a safe condition only upon the owner's failure to act after receiving notice from the city that the owner needs to remedy a dangerous condition present on the sidewalk. Thus, under the sidewalk rule, the owner of property which abuts a public sidewalk is liable for injuries that are caused by a condition on the sidewalk, if the owner has been notified by the city of the dangerous sidewalk condition and fails to act. *Rod Rehm, P.C. v. Tamarack Amer., supra*. See, generally, *Hill v. City of Lincoln*, 249 Neb. 88, 541 N.W.2d 655 (1996); *Stump v. Stransky*, 168 Neb. 414, 95 N.W.2d 691 (1959). See, also, Restatement (Second) of Torts § 349 (1965).

In the case *Andresen v. Burbank*, 157 Neb. 909, 62 N.W.2d 135 (1954), an action was brought against an abutting property owner for injuries sustained in a fall caused by a deteriorated sidewalk. The Nebraska Supreme Court held:

> The fee of the street is in the city, and the sidewalk is part of the street. It is the duty of the city to keep its sidewalks in repair and in a safe condition for public use. A lot owner is not required to repair an adjacent sidewalk until he has been notified by the city to do so, and in absence of such notice he is not liable to pedestrians for damages for personal injuries.

*Id*. at 910, 62 N.W.2d at 136. See, also, *Sipprell v. Merner Motors*, 164 Neb. 447, 82 N.W.2d 648 (1957); *McAuliffe v. Noyce*, 86 Neb. 665, 126 N.W. 82 (1910).

In Henderson's case, the district court found that the evidence reflected that the property where Henderson fell, which included the steps and the landing of the sidewalk, was "property that is actually located on [c]ity of Kearney sidewalks." The court concluded that Night Life did not owe a duty to Henderson to make sure that the sidewalk was in proper repair and granted Night Life's motion for directed verdict. Our review of that evidence indicates that neither Night Life nor Smallcomb had ever received any notice from the city to make repairs to the sidewalk, and thus, neither Night Life nor Smallcomb could be liable for injuries caused by a condition on the sidewalk as neither had been notified by the city of the dangerous sidewalk condition.

In his brief, Henderson does not address or discuss the application of the sidewalk rule, any of the aforementioned cases, or the application of § 15-734, but instead argues that the court should have imposed liability upon Night Life on the basis of the "'special use doctrine.'" Brief for appellant at 9.

The special use doctrine is the exception to the general rule that where the sidewalk was constructed or altered for the special benefit of the abutting property owner and served a use independent of the ordinary use for which sidewalks are designed, or where a sidewalk, though not specifically constructed or altered for the special benefit of the abutting property, has been used for such benefit, the owner or occupant of the property, regardless of whether he or she constructed or altered the sidewalk, owes a duty to the public to maintain the sidewalk in a reasonably safe condition, and hence, he or she may be held liable for injuries resulting from a defective or dangerous condition created by such special use of the sidewalk, particularly where such use is improper, extraordinary, or excessive under the circumstances. Annot., 88 A.L.R.2d 331 (Cum. Supp. 2014). See, also, Restatement (Second) of Torts § 350 (1965).

Henderson argues that because Night Life obtained the benefit of the use of the concrete landing to provide ingress and egress for its customers, it was in exclusive possession of the premises and had the authority to make repairs. In support of his argument for the application of the special use doctrine, Henderson relies upon the case *Crosswhite v. City of Lincoln*, 185 Neb. 331, 175 N.W.2d 908 (1970).

In *Crosswhite v. City of Lincoln*, an action was filed against the City of Lincoln and owners of property adjoining the street and sidewalk by a pedestrian who sustained injuries after tripping on a stop box, which was a water pipe that protruded above the concrete sidewalk. The stop box, installed by the City of Lincoln, was utilized to shut off the flow of water from the city water main to the property of the water consumer. The main issue in the case was whether the city or the adjoining property owners, or both, had control over the stop box and a duty to maintain it and the sidewalk in a safe condition. *Id*. The Nebraska Supreme Court first found that the city

was not permitted to delegate its duty to the public in regard to the waterworks system. *Id*. With respect to the adjoining property owners, the court held that an "abutting landowner may be subject to liability for the dangerous condition of portions of the public sidewalk which have been altered or constructed for the benefit of his property and which serve a use independent of and apart from the ordinary and customary use for which sidewalks are designed." *Id*. at 335, 175 N.W.2d at 911.

Thereafter, the court further held:

> [W]here persons are injured by a dangerous sidewalk condition created and maintained subject to the joint control of the city and an abutting landowner, and where the condition is maintained for the benefit of a proprietary business operated by the city, and is also for the benefit of the property of the abutting landowner, the city and the abutting landowner are joint or concurrent tort-feasors and each is directly liable for his own wrong.

*Id*. at 336, 175 N.W.2d at 911.

*Crosswhite v. City of Lincoln* and its holding revolve around a "dangerous sidewalk condition created and maintained subject to the joint control of the city and an abutting landowner . . . where the condition [was] maintained for the benefit of a proprietary business operated by the city, and [was] also for the benefit of the property of the abutting landowner" and does not involve the liability of a tenant of abutting property. 185 Neb. at 336, 175 N.W.2d at 911.

Other examples of the application of the special use doctrine include *McKenzie v. Columbus Centre, LLC*, 40 A.D.3d 312, 835 N.Y.S.2d 190 (2007) (under special use doctrine, owner of premises being demolished owed duty to pedestrians to provide safe walkway under sidewalk protective shed erected at demolition site); *Margulies v. Frank*, 228 A.D.2d 965, 644 N.Y.S.2d 596 (1996) (generally, special use cases involve installation of some object in sidewalk or some variance in construction thereof, such as concrete step mounted upon sidewalk immediately beneath elevated doorway of restaurant, installation of terrazzo tile underneath theater's marquee, installation of rails in sidewalk to facilitate removal of refuse,

placement of pipe for heating oil, or installation of driveway cutout); *Cool v. Vesey*, 31 Colo. App. 1, 499 P.2d 642 (1972) (stop box installed by defendant in city right-of-way which benefited defendant's property gave rise to duty of care); *Mathison v. Newton*, 251 Or. 362, 446 P.2d 94 (1968) (maintenance of elevator with sidewalk grating constituted special use of sidewalk by defendant for his sole benefit); *Quinn v. I. C. Helmly Furniture Company*, 141 So. 2d 302 (1962) (discharge of water from abutting property owner's downspout); *Sill v. Lewis*, 140 Colo. 436, 344 P.2d 972 (1959) (defendant liable for injuries caused by ice when he discharged water onto sidewalk); and *Hippodrome Amusement Co. v. Carius*, 175 Ky. 783, 195 S.W. 113 (1917) (water service box existing in sidewalk). Cf., *Williams v. KFC Nat. Management Co.*, 391 F.3d 411 (2d Cir. 2004) (dragging Dumpster over sidewalk was not special use by restaurateur because there were no special features constructed on sidewalk for benefit and use was routine); *Jordan v. City of New York*, 23 A.D.3d 436, 807 N.Y.S.2d 595 (2005) (landowner's commercial tenant's use of sidewalk to gain access to nearby basement door is insufficient to establish existence of special use); *Weil v. Rigali*, 980 S.W.2d 89 (Mo. App. 1998) (snowplow driving across sidewalk to remove snow does not constitute special use of public sidewalk).

Specifically, in the case *Granville v. City of New York*, 211 A.D.2d 195, 627 N.Y.S.2d 4 (1995), the special use doctrine was addressed in regard to injuries sustained when an individual tripped and fell on a raised portion of a sidewalk in front of a building owned by the defendant, who leased the premises to a corporation which operated a restaurant therein. In *Granville*, the court noted that the "photographic record reveals a concrete step mounted upon the sidewalk immediately beneath the elevated doorway of the restaurant which step protrudes from the doorway for a short distance beyond the building's boundary." 211 A.D.2d at 197, 627 N.Y.S.2d at 5. The court found that the "concrete step, which runs the entire width of the entranceway of the restaurant, clearly constitutes a special use for [the] landlord's benefit which facilitates access to the restaurant premises." *Id*. The court determined that the issue

concerning the causal connection between the owner's special use and the defective condition of the public walkway was an issue for the trier of fact and precluded the granting of summary relief. *Id*.

In the present case, the photographic evidence illustrates that the concrete landing in question is a raised one mounted on the sidewalk set beside the entire length of the building. That concrete landing leads up to a set of wooden stairs located immediately beneath the elevated entrance to the building. We are aware of the line of cases which indicate that the special use doctrine is not applicable merely because a sidewalk provides a method of ingress and egress into a business, which in turn benefits the business, but find that those cases are distinguishable from the instant case due to the addition of the raised concrete landing to the sidewalk in front of the property. See, *Christian v. U.S.*, 859 F. Supp. 2d 468 (E.D.N.Y. 2012) (applying New York law to find that use of public sidewalk to enter and exit building does not constitute special use unrelated to public use); *Roe v. City of Poughkeepsie*, 229 A.D.2d 568, 645 N.Y.S.2d 856 (1996) (mere fact that patrons of defendants' restaurant used abutting sidewalk did not establish special use imposing obligation on defendants to maintain that sidewalk); *Whitlow v. Jones*, 134 Or. App. 404, 895 P.2d 324 (1995) (finding that although business establishment derives special advantage from use of sidewalk by its business invitees for ingress to and egress from business, that is not special use for liability purposes). Thus, in accordance with *Crosswhite v. City of Lincoln*, 185 Neb. 331, 175 N.W.2d 908 (1970), we find that under the circumstances of this case, an abutting landowner may be subject to liability for the dangerous condition of portions of the public sidewalk which have been altered or constructed for the benefit of the landowner's property and which serve a use independent of and apart from the ordinary and customary use for which sidewalks are designed.

That, however, does not end the inquiry in this case, because the issue which Henderson assigns as error concerns the directed verdict in favor of Night Life, the tenant of the abutting property, not the actual owner of the abutting property.

We are required to treat Night Life's motion for directed verdict as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, Henderson is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference which can reasonably be deduced from the evidence. See, *Wulf v. Kunnath*, 285 Neb. 472, 827 N.W.2d 248 (2013); *Lesiak v. Central Valley Ag Co-op*, 283 Neb. 103, 808 N.W.2d 67 (2012). The fact remains that Night Life is the tenant of the property, not the owner, and Henderson has not provided us with any authority which suggests that the liability of the property owner under the special use doctrine is imputed to a tenant in the same manner. No evidence was provided showing that under the terms of the lease between Night Life and Smallcomb, Night Life was responsible for the maintenance of the steps or raised concrete landing. The issue of the landowner's liability was submitted to the jury, which returned a verdict in favor of the landowner and not Henderson, a determination which we shall not second-guess. See *Wulf v. Kunnath*, *supra* (jury verdict will not be set aside unless clearly wrong, and it is sufficient if there is any competent evidence presented to jury upon which it could find for successful party). Therefore, we find that Night Life's motion for directed verdict was properly granted.

*"Opening the Door."*

Henderson assigns that the trial court erred in failing to find that Smallcomb opened the door with respect to questioning regarding repairs made to the concrete landing after Henderson's fall.

Prior to trial, Night Life and Smallcomb filed a joint motion in limine to specifically exclude any testimony or evidence regarding any repairs made to the landing after the accident, which motion was granted. However, Henderson contends that trial counsel for both Night Life and Smallcomb opened the door at trial by questioning Anderson about repairs made to the premises prior to the fall and then following up by asking Anderson if he had "made other repairs to the exterior of the property." Shortly thereafter, outside of the presence of the

jury, Henderson made an offer of proof from Anderson's deposition testimony that if Anderson would have made a full and complete answer to the question, the jury would have been able to hear the evidence that repairs were made to the landing since Henderson's fall. The district court found that the testimony was specifically covered in the motion in limine previously granted and was, thereby, excluded.

[7-10] The concept of "opening the door" is a rule of expanded relevancy which authorizes admitting evidence which otherwise would have been irrelevant in order to respond to (1) admissible evidence which generates an issue or (2) inadmissible evidence admitted by the court over objection. *Huber v. Rohrig*, 280 Neb. 868, 791 N.W.2d 590 (2010); *Sturzenegger v. Father Flanagan's Boys' Home*, 276 Neb. 327, 754 N.W.2d 406 (2008). The rule is most often applied to situations where evidence adduced or comments made by one party make otherwise irrelevant evidence highly relevant or require some response or rebuttal. *Huber v. Rohrig, supra*. Opening the door is a contention that competent evidence which was previously irrelevant is now relevant through the opponent's admission of other evidence on the same issue. See *id*. The admission or exclusion of evidence is generally reviewed for an abuse of discretion. See *id*.

In this case, the motion in limine was very specific and addressed only the exclusion of "[a]ny testimony or evidence with regard to the repairs made to the concrete landing, which landing, walkway, or step regardless of the terminology, near the entrance to the building . . . subsequent to the accident claimed . . . ." The district court did not allow the admission of evidence deemed inadmissible over objection. See, *id*.; *Sturzenegger v. Father Flanagan's Boys' Home, supra*. Thus, if this evidence were to be allowed, it would be in order for Henderson to respond to admissible evidence which generates an issue. See *id*.

Upon our review of the case, we find that the door was not opened as to Henderson's testimony regarding repairs to the exterior of the property. Testimony that repairs to the outside of the building were made does not render the issue of repairs made specifically to the concrete landing after the date of

Henderson's fall now relevant. The testimony that repairs were made after the fall to the place where Henderson fell is irrelevant to a determination of whether or not Smallcomb had a duty to repair the landing before the fall occurred. The district court did not abuse its discretion by not allowing the testimony before the jury regarding the repairs made after the fall. This assignment of error is without merit.

*Jury Instruction.*

Henderson argues that the trial court failed to give the appropriate jury instruction on the aggravation of a preexisting condition and should have given his proposed jury instruction.

[11] In Henderson's case, in a unanimous decision, the jury found for Smallcomb and returned a jury verdict form which set forth, "We the jury find that [Henderson] has not met his burden of proof, and we enter judgment for [Smallcomb]." By its returning that form, we know that the jury determined that Henderson failed to meet his burden of proof, from which we can conclude that the jury never reached the issue of preexisting conditions and damages. Therefore, we need not address this assignment of error, as it is not necessary to the disposition of this appeal. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Holdsworth v. Greenwood Farmers Co-op*, 286 Neb. 49, 835 N.W.2d 30 (2013).

## CONCLUSION

In conclusion, we find that the district court properly granted Night Life's motion for directed verdict. The district court also did not abuse its discretion by finding that the door had not been opened to include testimony that there had been repairs made to the concrete landing after the fall. Therefore, we affirm.

AFFIRMED.